Kelly McPEAK, Appellee

v.

Marshall MOORE, Director, North
Dakota Department of Trans-
portation, Appellant.

Civil No. 950408.

Supreme Court of North Dakota.

April 3, 1996.

Ralph A. Vinje, of Vinje Law Firm, Bis-
marck, for appellee.

Andrew Moraghan, Assistant Attorney General, Attorney General's Office, Bismarck, for appellant.

VANDE WALLE, Chief Justice.

Marshall Moore, Director of the North Dakota Department of Transportation (the Department), appealed from a district court judgment reversing the administrative suspension of Kelly McPeak's driving privileges for driving a vehicle while under the influence of intoxicating liquor, in violation of Section 39–08–01, N.D.C.C. We conclude there was a preponderance of evidence showing the on-site Alco–Sensor screening test was conducted with a device approved by the State Toxicologist and that the arresting officer had probable cause to arrest McPeak for driving under the influence of alcohol. We, therefore, reverse the district court judgment and reinstate the suspension.

Using radar, Officer Lyle Sinclair observed McPeak's vehicle traveling in Bismarck at 37 miles per hour in a 25 mile per hour speed zone. Sinclair stopped McPeak's vehicle and issued a citation to McPeak for speeding. Sinclair detected a moderate odor of alcohol on McPeak's breath and asked McPeak to perform some field sobriety tests. Sinclair determined McPeak failed recitation of the alphabet and two balance tests but passed a test counting backwards. Sinclair then asked Officer Steve Bitterman to administer an Alco–Sensor screening test, which McPeak failed. Sinclair arrested McPeak for driving under the influence of alcohol and transported him to the police station, where McPeak agreed to take an Intoxilyzer test. The results of that test showed McPeak had a blood alcohol concentration of .13 percent. Following an administrative hearing, McPeak's driving privileges were suspended for two years. McPeak appealed from the suspension to the district court. After observing a videotape of sobriety tests McPeak performed at the Bismarck Police Department after McPeak's arrest, the trial court concluded the arresting officer did not have probable cause to arrest McPeak and reversed the Department's suspension of McPeak's driving privileges. The Department appealed.

■ The Department argues the hearing officer correctly determined that Sinclair, after conducting field sobriety tests and getting the results of the Alco–Sensor test conducted by Bitterman, had probable cause to arrest McPeak for driving while under the influence of alcohol. The district court did not mention the Alco–Sensor test in its decision, and there is no explanation in the record for the court's failure to acknowledge or discuss it. Because we review the hearing officer's decision, not the district court's decision, the court's failure to consider the Alco–Sensor issue does not necessitate a remand. *See Peterson v. Director, N.D. Dep't of Transp.*, 536 N.W.2d 367, 370 (N.D.1995).

McPeak asserts there is insufficient evidence to show the Alco–Sensor device used by Bitterman was approved by the State Toxicologist and, therefore, the test results from it could not be relied upon by Sinclair as a basis for making the arrest. However, McPeak's counsel concedes that if the record contains sufficient evidence Bitterman used an approved device to give the Alco–Sensor test, then Sinclair had probable cause to make the arrest.

■ An appeal from a district court decision reviewing an administrative license suspension is governed by the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. We review the record and decision of the administrative agency, not the ruling of the district court. *Johnson v. N.D. Dep't of Transp.*, 530 N.W.2d 359 (N.D.1995). Our review is limited to whether (1) the findings of fact are supported by a preponderance of the evidence; (2) the conclusions of law are sustained by the findings of fact; and (3) the agency's decision is supported by the conclusions of law. *Zimmerman v. Director, N.D. Dep't of Transp.*, 543 N.W.2d 479 (N.D.1996). Probable cause is a question of law which is fully reviewable on appeal. *See Wilhelmi v. Director, Dep't of Transp.*, 498 N.W.2d 150 (N.D.1993). The hearing officer's underlying factfindings will be overturned on appeal only if they are not supported by a preponderance of the evidence. *Salter v. N.D. Dep't of Transp.*, 505 N.W.2d 111, 112 (N.D. 1993).

An Alco–Sensor device is used for on-site testing of a person's breath to estimate the alcohol content of the person's blood to assist the law enforcement officer in determining whether there is probable cause to make a DUI arrest. *See State v. Woytassek*, 491 N.W.2d 709 (N.D.1992). Section 39–20–14, N.D.C.C., which provides statutory guidelines for using such tests, states in relevant part:

> "The screening test or tests must be performed by an enforcement officer certified as a chemical test operator by the state toxicologist and according to methods and with devices approved by the state toxicologist."

The Alco–Sensor is a device approved by the State Toxicologist. *Nichols v. Backes*, 461 N.W.2d 113 (N.D.1990). The record contains a certified copy of the State Toxicologist's approval of the Alco–Sensor for on-site screening:

### "DEVICE

> "The ALCO–SENSOR, model III, manufactured by Intoximeters, Inc., St. Louis, Missouri, is approved for the administration of onsite screening tests to estimate the alcohol content of a person's blood."

Bitterman gave the following testimony regarding the particular Alco–Sensor device he used to test McPeak:

> "MS. HARSCHE: Is the Alco–Sensor that you used approved for use?
>
> "OFFICER BITTERMAN: Yes, it is.
>
> "MS. HARSCHE: Do you know who manufactures that particular device?
>
> "OFFICER BITTERMAN: No, I do not.
>
> "MS. HARSCHE: How do you know it's approved for use?
>
> "OFFICER BITTERMAN: It comes from the state toxicologist's office. . . .

> \* \* \* \* \*

> "MS. HARSCHE: . . . Is that personal knowledge that it comes from the state toxicologist?
>
> "OFFICER BITTERMAN: No, it's . . . there's a sticker on the box that says state toxicologist's office. . . . [T]he serial num-

ber for the Alco–Sensor that was used is 1018434."

■ McPeak argues the evidence does not show Bitterman used an approved device, because Bitterman did not know the manufacturer of the device he used and did not testify that it was a "model III," Alco–Sensor. Although Bitterman did not know the particular manufacturer of the device he used, he did know the device came from the State Toxicologist's office, and he specifically identified it by serial number. The hearing officer found Bitterman's testimony was sufficient "to establish the device is an approved device." We conclude Bitterman's testimony was adequate to establish a prima facie showing the device he used was an approved one. McPeak made no argument nor introduced any evidence to contradict Bitterman's testimony that the test was conducted with an approved Alco–Sensor. We conclude a reasonable person could find there was a preponderance of evidence the Alco–Sensor used by Bitterman was approved by the State Toxicologist.

At the police station, Bitterman administered an Intoxilyzer test, which showed McPeak had a blood alcohol concentration of .13 percent. The operating procedure for the Intoxilyzer requires the subject to blow into the Intoxilyzer two times. After the subject blows into the Intoxilyzer the first time, the operator is required to blow into the simulator. The subject then blows into the Intoxilyzer for a second time. McPeak argues Bitterman did not adhere to the approved method of operating the Intoxilyzer, because he placed a clean mouthpiece on the tube before he blew into the simulator. McPeak asserts that because the approved method specifically states a mouthpiece is to be used when the subject blows into the Intoxilyzer, but does not expressly state that a mouthpiece is to be used when the operator blows into the simulator, Bitterman deviated from the operating procedures by attaching a mouthpiece to the simulator tube before blowing into it.

■ Fair administration of an Intoxilyzer test may be established by showing it was performed according to the State Toxicologist's approved method. *State v. Lamb*, 541

N.W.2d 457 (N.D.1996). Although fair administration of the test requires the operator to scrupulously follow the approved method, "we do not equate scrupulous with hypertechnical." *State v. Chihanski,* 540 N.W.2d 621, 624 (N.D.1995). Bitterman testified that operators attach a mouthpiece to the simulator "for sanitary reasons," because the same machine is used by different operators who, in accordance with the approved method, are required to blow into the simulator "to purge the simulator of any condensation that has accumulated in the tube which is attached to the Intoxilyzer." Public policy warrants the use of a clean mouthpiece for each of different operators who are required to blow into the same simulator tube while administering tests. Common sense dictates that use of a clean mouthpiece cannot possibly affect the test results. The hearing officer specifically found:

> "While the approved method does not require a mouthpiece to be placed on the simulator tube, I find that doing so does not negate the fact that the simulator was blown through. I find that the approved method was followed."

We conclude this finding is supported by a preponderance of the evidence.

In accordance with this opinion, we reverse the district court judgment and reinstate the administrative suspension of McPeak's driving privileges.

SANDSTROM, NEUMANN and MESCHKE, JJ., concur.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.