Jack GREENWOOD, Appellee,

v.

Marshall MOORE, Director, North Dakota Department of Transportation, Appellant.

Civil No. 950320.

Supreme Court of North Dakota.

April 8, 1996.

Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for appellee; argued by Lisa Ridgedale, third year law student. Appearances by Bruce D. Quick and Dan Conrad, third year law student.

Monte L. Rogneby (argued), Assistant Attorney General, Attorney General's Office, Bismarck, for appellant.

MESCHKE, Justice.

The North Dakota Department of Transportation appeals a district court judgment that reversed a Department decision to suspend Jack Greenwood's driving privileges. We affirm because the Department held the hearing too late without the prerequisite "most compelling reasons."

Officers Michael Erbes and John Retterath of the Fargo Police Department were called to the scene of an accident on February 17, 1995. There, they saw that someone had driven a pickup off the street into the front yard of a home, struck a mailbox, and left the pickup stuck in snow. They also saw a car at the scene, with Greenwood between the car and the pickup, attempting to attach a tow line to the vehicles.

After observations, questions, and field tests, the officers arrested Greenwood for driving while under the influence of alcohol. They took him to the Cass County Jail for an Intoxilizer test that was unsuccessful because the machine did not operate properly. The officers then took Greenwood to a hospital where a registered nurse drew a blood sample. The state toxicologist's office reported Greenwood's blood contained 0.17 percent alcohol.

After the police issued, served, and forwarded on March 9, 1995, the Report, Notice and Temporary Permit to notify Greenwood that the Department intended to suspend his driver's license, Greenwood timely requested a hearing. The Department scheduled the hearing for April 7, 1995. When the hearing began with hearing officer Laura Wick Loberg presiding, Officer Retterath testified that he had called Loberg with a question about the paperwork for the failed Intoxilizer test. Greenwood objected that any communication between Retterath and Loberg was improper. Greenwood further objected to Loberg presiding, and insisted, "we're entitled to a different hearing officer." *See* NDCC 28–32–08.1 ("Hearing officer—Disqualification—Substitution."). Although Loberg said she could not recall the phone conversation, she nonetheless suspended the hearing so another hearing officer could preside. She told Greenwood the delayed hearing would be scheduled "within 30 days."

The Department first set the delayed hearing for April 21, 1995, then reset it for April 27, and then rescheduled it for May 9. With each delay, the Department extended Greenwood's temporary driver's permit. The hearing was finally held on May 9.

When the new hearing officer, Mary Ellen Varvel, reconvened the hearing, Greenwood objected. He argued that the Department could not properly hold the hearing under NDCC 39–20–05 because over thirty days had elapsed since the Report and Notice was issued on March 9, and because the time prescribed for the hearing was jurisdictional. The new hearing officer overruled Greenwood's objection without explanation. After the hearing, Varvel suspended Greenwood's driver's license for ninety-one days.

Greenwood appealed the suspension to the district court. That court reversed the suspension, reasoning:

1. There is clear evidence from the record that the investigating officers, with the Fargo Police Department, had improper *ex parte* communication with the Hearing Officer prior to the hearing in question.

2. This is the third time in two years that this Court has heard complaints about *ex parte* communication between the investigating agencies and the Hearing Officer;

3. The Court reverses the Hearing Officer's suspension of driving privileges pursuant to the principles enunciated by the North Dakota Supreme Court in *Madison v. Department of Transportation*, 503 N.W.2d 243 (N.D.1993).

In the Department's appeal from the district court's reversal of the suspension, the Department argues the *Madison* rationale does not apply to this case, the hearing was properly completed even beyond the statutory limit, and the suspension was therefore proper. We agree with the Department that the *Madison* rationale does not apply here, but we reject the argument that the hearing was timely held.

 The Administrative Agencies Practice Act in NDCC ch. 28–32 generally governs review of an administrative decision to suspend a driver's license. *Baillie v. Moore*, 522 N.W.2d 748, 749 (N.D.1994). We look to the record compiled before the agency, and we review the agency's decision, not the district court's. *Peterson v. Director, North Dakota Dep't of Transp.*, 536 N.W.2d 367, 369 (N.D.1995). As we explained in *North Dakota Dep't of Transp. v. DuPaul*, 487 N.W.2d 593, 595 (N.D.1992), we must affirm the agency's decision unless: 1) a preponderance of the evidence does not support the agency's findings; 2) the agency's findings of fact do not support its conclusions of law and its decision; 3) the agency's decision violates the constitutional rights of the appellant; 4) the agency did not comply with the Administrative Agencies Practice Act in its proceedings; 5) the agency's rules or procedures have not afforded the appellant a fair hearing; or 6) the agency's decision is not in accordance with the law.

 When "systemic disregard of law" by a governmental agency becomes evident, a court may reverse a decision in favor of the government to prophylactically ensure that the government "acts consistently and predictably in accordance with the law." *Madison v. North Dakota Dep't of Transp.*, 503

N.W.2d 243, 246–47 (N.D.1993). The district court applied the *Madison* rationale to reverse here. Under *Madison*, a party relying on improper agency conduct need not show particular prejudice from the conduct, but must show at least some persistent pattern of improper agency conduct. *See State v. Runck*, 534 N.W.2d 829, 832 (N.D.1995); *see also City of Jamestown v. Erdelt*, 513 N.W.2d 82, 86 (N.D.1994). As we explained in *Hickey v. North Dakota Dep't of Health & Consol. Lab.*, 536 N.W.2d 370, 373 n. 1 (N.D. 1995), more than a "single miscue" by the government is needed to evidence the institutional noncompliance that amounts to "systemic disregard of law."

 Here, the district court concluded a single *ex parte* communication between the police and the hearing officer was improper, and reversed because it had "heard complaints" about similar improper conduct. But judicial review must be limited to this record, and this record reflects only one identifiable incident. Evidence of a single improper act does not warrant a judicial conclusion of "systemic disregard of law." *Id.* Therefore, the *Madison* rationale did not justify the reversal of the Department's decision.

 Still, Greenwood argues, the Department failed to act within the thirty-day time limit in NDCC 39–20–05 for a hearing. The statute for administrative license suspensions directs that a driver may request a hearing "if the person mails a request for the hearing to the director within ten days after the date of issuance of the temporary operator's permit." NDCC 39–20–05(1).[1] Then, the Department "must" hold the hearing "within twenty-five days after the date of issuance of

1. NDCC 39–20–05(1) directs:

Before issuing an order of suspension, revocation, or denial under section 39–20–04 or 39–20–04.1, the director shall afford that person an opportunity for a hearing if the person mails a request for the hearing to the director within ten days after the date of issuance of the temporary operator's permit. The hearing must be held within twenty-five days after the date of issuance of the temporary operator's permit, but the hearing officer may extend the hearing to within thirty days after the issuance of the temporary operator's permit to accommodate the efficient scheduling of hearings. If the hearing date is extended beyond twenty-five days from the issuance of the temporary operator's permit, the director shall provide extended temporary operator's privileges to the date of the hearing. If no hearing is requested within the time limits in this section, and no affidavit is submitted within the time limits under subsection 2 of section 39–20–04, the expiration of the temporary operator's permit serves as the director's official notification to the person of the revocation, suspension, or denial of driving privileges in this state.

the temporary operator's permit, but the hearing officer may extend the hearing to within thirty days after the issuance of the temporary operator's permit to accommodate the efficient scheduling of hearings." *Id.*

In this case, the Department scheduled the hearing for April 7, twenty-nine days after issuance of the temporary operator's permit on March 9. After the first hearing officer delayed the hearing by her disqualification, the Department first reset it for April 21, forty-three days after the issuance date, and then again reset it for April 27, forty-nine days after the issuance date. The hearing was finally rescheduled and completed on May 9, sixty-one days after the issuance date.

■ The Department urges these delays did not violate the statutorily mandated time limit because, although not completed within thirty days, the hearing began within that time. A driver must act within the time directed for requesting a hearing or lose the right to a hearing. *See Lund v. North Dakota State Highway Dep't,* 403 N.W.2d 25 (N.D. 1987); *Buzick v. North Dakota State Highway Comm'r,* 351 N.W.2d 438 (N.D.1984). The Department argues it need not act within the time directed for a hearing. Thus, we need to decide here for the first time whether the Department must complete the hearing within the time designated by NDCC 39–20–05, and the effect of the Department's failure to do so.

■ Interpretation of a statute is a question of law, fully reviewable by this court. *Olson v. North Dakota Dep't of Transp.,* 523 N.W.2d 258, 259 (N.D.1994). When we construe a statute, our goal is to ascertain the legislature's intent. *Northern X–Ray Co., Inc. v. State,* 542 N.W.2d 733, 735 (N.D.1996). As we explained in *Northern X–Ray,* we look first to the plain language of a statute for legislative intent, and the legislative intent is presumed to be clear if the language is clear and unambiguous.

■ The key language in NDCC 39–20–05 directs that "[t]he hearing must be held" within the designated time, twenty-five days, extendable to thirty days "to accommodate the efficient scheduling of hearings." The

Department urges that "held" ought to mean "commenced;" Greenwood replies that it should mean "completed." Words used in a statute "are to be understood in their ordinary sense." NDCC 1–02–02. "Held" is the past tense of "hold," a word that has many "ordinary sense" definitions. *See* Black's Law Dictionary 731 (6th ed.1990) (defining "hold" as "[t]o administer; to conduct or preside at; to convoke, open, and direct the operations of"); Webster's New World Dictionary 668 (2nd College ed.1980) (defining "hold" as "to have or conduct together; ... to call together or preside over"). On their face, both the Department's and Greenwood's interpretations of section 39–20–05 seem rational.

■ When a statute is susceptible of different but rational interpretations, it is ambiguous. *Kroh v. American Family Ins.,* 487 N.W.2d 306, 307 (N.D.1992). To construe an ambiguous statute, NDCC 1–02–39 allows us to use extrinsic aids, including legislative history.

In 1987, a maximum hearing limit of thirty-five days, "if good cause is shown," was amended into NDCC 39–20–05, to replace a prior 45–day maximum. 1987 N.D. Laws ch. 481, § 4. The bill that brought about this amendment had been designed on introduction to "wipe out" an administrative license suspension if the driver was found innocent in a later criminal trial. Hearings on SB 2472, Senate Committee on the Judiciary Minutes (Feb. 11, 1987) (hereinafter Senate Minutes) (testimony of Sen. Bonnie Heinrich). The "wipe out" language, making administrative suspensions wholly dependent upon a later criminal conviction, was removed, however, in the face of departmental protests that it would make an administrative suspension ineffective, and would gut North Dakota's DUI laws. *Id.* Instead, the administrative procedure was expedited to a thirty-five day limit. According to the Senate Minutes, Bruce Quick from the Attorney General's Office, who advocated this expedited procedure, testified that "[t]he beauty of this law is that it keeps drunk drivers off the roads. The success we're having in ND is due to the loss of license."

The thirty-five day time limit for a hearing in NDCC 39–20–05 was further reduced to thirty days by another amendment in 1993. That amendment also repealed another sentence that allowed a hearing officer to schedule the hearing "on a date within forty-five days of the date of the operator's arrest" for the unavailability of the driver, the driver's attorney, or a witness, or upon "a showing of good cause by the operator." 1993 N.D. Laws ch. 389, § 3. Robert Olson from the North Dakota Department of Transportation testified that the amendment was necessary "to allow the state to qualify for 410 alcohol funding, a federal program which will provide $296,000 to the state for alcohol education and enforcement purposes." Hearings on SB 2136, House Transportation Committee Minutes (Feb. 5, 1993) (House Minutes) (written testimony of Robert Olson). Under federal law, states were eligible for additional funding if they established an "expedited driver's license suspension or revocation system for persons who operate motor vehicles while under the influence of alcohol." 23 USCS § 410(d)(1). One feature of this expedited system required "the suspension and revocation ... take effect not later than 30 days after the day on which the person first received notice...." 23 USCS § 410(d)(1)(F). Olson represented that, with these amendments, "[i]f the hearing officer is unable to conduct the hearings within the thirty-day time period specified in the law, the license will be returned, pending the Court decision on the DUI offense."[2]

 Because federal law thus effectively requires that a suspension "take effect" within thirty days, the legislative command that the hearing "must be held" within that time means that the hearing was intended to be "completed," not merely "commenced," within that time. This necessitates an interpretation that the legislative direction is mandatory.

A similar interpretation stems from the Department's representation to the legislature that a license would be returned if the hearing was not timely completed, and that the license suspension would then await the effect of the slower criminal procedure. See House Minutes (written testimony of Robert Olson). Furthermore, "[t]he word 'must' as ordinarily used indicates a mandatory and not merely a directory or nonmandatory duty." Federal Land Bank of St. Paul v. Waltz, 423 N.W.2d 799, 802 (N.D.1988) (citing In Interest of D.S., 263 N.W.2d 114, 119 (N.D.1978)). "'Must' implies obligation or compulsion—to be legally or morally obliged to do a given thing." Murie v. Cavalier County, 68 N.D. 242, 254, 278 N.W. 243, 248 (1938). Since the statute directs a hearing within twenty-five days ("must be held"), and only allows an extension of five more days, the imperative effect of the legislative direction is strong. The statute mandates an expedited administrative hearing, but falls back on the slower criminal procedure if that hearing is not expeditiously held.

 This hearing was clearly not held expeditiously. However, the statute does not describe a remedy for the Department's failure to hold a hearing within the time limit.[3] Usually, when no statutory remedy is speci-

---

**2.** Since 1991, if a person is convicted of driving under the influence or a related offense under NDCC 39–08–01, or an equivalent municipal ordinance, NDCC 39–06.1–10(7) directs that the person's license be suspended as follows:

 a. Ninety-one days if the operator's record shows the person has not violated section 39–08–01 or equivalent ordinance within the five years preceding the last violation.

 b. Three hundred sixty-five days if the operator's record shows the person has once violated section 39–08–01 or equivalent ordinance within the five years preceding the last violation.

 c. Two years if the operator's record shows the person has at least twice violated section 39–08–01 or equivalent ordinance within the five years preceding the last violation.

See 1991 N.D. Laws ch. 414, § 2. These periods of suspension are equivalent to those imposed by the administrative process. See NDCC 39–20–04.1(1).

**3.** This contrasts with the specific remedy when a driver misses the time limit for requesting a hearing. Then, NDCC 39–20–05(1) specifies:

 If no hearing is requested within the time limits in this section, and no affidavit is submitted within the time limits under subsection 2 of section 39–20–04, the expiration of the temporary operator's permit serves as the director's official notification to the person of the revocation, suspension, or denial of driving privileges in this state.

fied for an agency's failure to meet a time limit, we do not reverse without a showing of prejudice from the delay. *Johnson v. North Dakota Workers' Compensation Bureau*, 539 N.W.2d 295, 298 (N.D.1995). *Compare State v. Holecek*, 545 N.W.2d 800 (N.D.1996) (citing statutes that specify a remedy for failure to meet specific time limits). Here, however, while the legislature did not make the time limit jurisdictional, it clearly intended the time for a hearing to be imperative. Therefore, we conclude that the Department is authorized only to take the license of an impaired driver expeditiously. If it does not do so, there is little or no reason for an extended administrative procedure to parallel the more extended criminal procedure to accomplish a comparable result.

■ The appropriate standard for excusing the delay of a license suspension hearing is contained in the Department's own regulation, although the Department did not cite it to us. Part of NDAC 37–03–03–09 directs:

> The date, time, and place of the hearing shall be established by the hearing officer as workload permits. The scheduled date, time, and place for hearing may be changed only with the permission of the hearing officer, *bearing in mind the time constraints provided by North Dakota Century Code section 39–20–05 for holding the hearing.* Rescheduling will be allowed *only for the most compelling reasons* and scheduling conflicts of the licensee or counsel will not be sufficient cause to reschedule a hearing at a time beyond that provided by law.

(emphasis added). The Department can excuse its own failure to meet the hearing deadline only when it has "most compelling reasons" for the delay.

The Department offers no explanation why it delayed completion of Greenwood's hearing so long, and thus no "most compelling reason" is apparent here. The Department rescheduled the hearing twice more after the initial hearing was delayed past the thirty-day maximum, when the first hearing officer unexpectedly disqualified herself. While the first delay might have been for a compelling reason, the subsequent extensions are unexplained, and do not appear to have been for

any "most compelling reason." We thus conclude the Department did not hold a timely hearing.

We conclude the district court correctly reversed the Department's decision suspending Greenwood's driving privileges, even though it did so for an incorrect reason. We adopt the correct reason, and we affirm the judgment of the district court.

VANDE WALLE, C.J., and SANDSTROM and NEUMANN, JJ., concur.

BERYL J. LEVINE, Surrogate Judge, concurs in the result.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.