1997 ND 114

**David Duke LARSON, Petitioner and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

**Civil No. 970043.**

Supreme Court of North Dakota.

June 3, 1997.

Dickson Law Office, Bismarck, for petitioner and appellant; argued by Timothy Q. Purdon.

Andrew Moraghan (argued), Assistant Attorney General, Attorney General's Office, Bismarck, for respondent and appellee.

MESCHKE, Justice.

[¶ 1] David Larson appealed a judgment affirming an agency decision to suspend his driving license for 365 days. We affirm because detaining Larson for detoxification without notifying his family did not deny him a fair hearing, and his detention did not show a systematic disregard for the law on bail and detoxification.

[¶ 2] While on routine patrol south of Jamestown during an early June morning in 1996, State Trooper Scott King noticed Larson's car weaving in its lane. He stopped Larson when the car jerked back into its lane after crossing the center line. When Troop-er King approached Larson's car, he smelled alcohol and noticed Larson's speech was slightly slurred. While Larson sat in the patrol car, Trooper King realized the odor of alcohol came from Larson, saw his bloodshot eyes, and heard more slurred speech. Larson admitted he had been drinking. In field sobriety tests, Larson failed a counting test, a walk-and-turn test, and an Alco–Sensor screening test. Trooper King arrested Larson for driving while impaired by alcohol and took him to the Stutsman County Correctional Center. There, an Intoxilyzer test showed Larson had a blood-alcohol concentration of 0.14 percent.

[¶ 3] Larson was "sobbing continually" at the jail, and Trooper King felt Larson became "more depressed than I have ever seen during a DUI ever." When he asked Larson to sign the criminal summons, Larson responded, "it doesn't matter, [I] won't be there anyway." Larson made a like comment to another officer. From Larson's attitude, Trooper King became concerned for his safety.

[¶ 4] Trooper King spoke to jail staff and his supervisor about holding Larson for the night. All agreed Larson should be detained for detoxification. Trooper King decided to detain Larson, and the jail did not release Larson until 8:30 or 9:00 a.m. Trooper King did not notify his family that the jail was holding him for detoxification.

[¶ 5] At the suspension hearing, Joe Urhran, a friend of Larson, testified Larson called him from the jail. Urhran then called the jail and asked to post bail for Larson, but was told they were holding him for eight hours. Urhran questioned whether they could hold Larson if he posted bail, but was told the jail would not release him before morning.

[¶ 6] Larson testified about what he would have done if the jail had let him out on bail:

Well, they want, you know, talk to some of my friends, like David seen me at the bar ... or the dance and bar the night before. Basically, you know, I was going to ask them if they, you know, had seen me, cuz I wasn't ... I mean, stumbling or bumbling around or anything, or I was not slurred

speech ... at least I did not think I was as the officer stated, so I wanted to talk to them. Also, I was left in that situation that they had arrest me, I wanted to talk to a lawyer also.

Larson also submitted into evidence his Medical Screening Form at the jail that had not recorded any suicidal behavior by Larson. Trooper King, however, testified that the form had probably been completed before Larson began acting suicidal and that another form recorded the reasons for detaining Larson.

[¶ 7] The hearing officer found "King made an individualized determination that Larson may harm himself and therefore Larson was not released on bail for approximately six hours," and concluded Larson's detention was not "within the purview of this administrative hearing; but if it were, the detention was reasonable and valid." The hearing officer suspended Larson's driving license for 365 days, and he appealed. The district court affirmed because it concluded his detention, while an appropriate subject for criminal proceedings, did not affect a license suspension hearing. Larson appealed.

[¶ 8] Larson asks us to reverse his suspension because, he argues, Trooper King's failure to notify his family about his detention denied him a fair hearing. He contends the detention prevented him from consulting an attorney, obtaining an independent test, or finding witnesses on the degree of his impairment before he was stopped. Such evidence, Larson asserts, would have rebutted the evidence about his intoxication.

[¶ 9] The Administrative Agencies Practice Act governs review of an agency decision to suspend a driver's license. NDCC ch. 28–32; *Greenwood v. Moore*, 545 N.W.2d 790, 793 (N.D.1996). We review the record and decision of the agency, not the district court's. *McPeak v. Moore*, 545 N.W.2d 761, 762 (N.D.1996). We must decide whether the agency's rules or procedures have afforded the driver a fair hearing. NDCC 28–32–19(4). Otherwise, our review of the agency's decision is confined to whether (1) a preponderance of the evidence supports the findings of fact; (2) the findings of fact sustain the conclusions of law; and (3)

the conclusions of law support the agency's decision. NDCC 28–32–19; *McPeak*, 545 N.W.2d at 762. As we explained in *Pavek v. Moore*, 1997 ND 77, ¶ 4, 562 N.W.2d 574 (1997) a preponderance of the evidence supports a hearing officer's findings if they were reasonably made from the weight of the entire evidence.

[¶ 10] Detoxification procedures for an apparently intoxicated person are designated in NDCC 5–01–05.1:

> **Public intoxication—Assistance—Medical care.** A peace officer has authority to take any apparently intoxicated person to the person's home, to a local hospital, to a detoxification center, or, whenever that person constitutes a danger to that person or others, to a jail for purposes of detoxification.... That intoxicated person must not be held in jail because of intoxication more than twenty-four hours. An intoxicated person may not be placed in a jail unless a jailer is constantly present within hearing distance and medical services are provided when the need is indicated. Upon placing that person in a hospital, detoxification center, or jail, the peace officer shall notify the intoxicated person's family as soon as possible....

An officer can detain an intoxicated person in jail only if the officer makes an individualized determination the person "constitutes a danger to self or others." *City of Jamestown v. Erdelt*, 513 N.W.2d 82, 84 (N.D.1994). The officer must also notify the detained person's family, if possible. *City of Fargo v. Stutlien*, 505 N.W.2d 738, 743 (N.D.1993). Here, there is no evidence Trooper King tried to notify Larson's family about holding him for detoxification.

[¶ 11] By failing to try to contact Larson's family, Trooper King failed to fully comply with the statutory detention procedures. However, unlawful detention is usually not enough to dismiss a later proceeding. *See Erdelt*, 513 N.W.2d at 85. While we do not decide here whether or not an unlawful detention will ever make an agency hearing unfair, we assume that it may in reviewing this case. *Compare Pladson v. Hjelle*, 368 N.W.2d 508, 511 (N.D.1985)("The rights that

the licensee may assert in a criminal proceeding are not applicable in implied-consent hearings under Chapter 39–20, N.D.C.C.").

 [¶ 12] A wrongfully detained person must establish the detention actually prejudiced the person's right to a fair hearing. *See Stutlien,* 505 N.W.2d at 745. As we explained in *City of Fargo v. Thompson,* 520 N.W.2d 578, 580 (N.D.1994), to prove actual prejudice to later proceedings, a wrongfully detained person must identify what significant evidence for his case was lost by the detention. Here, Larson contends his detention kept him from obtaining evidence important to this hearing. We are not persuaded.

[¶ 13] Larson insists his detention prevented him from consulting with an attorney and obtaining an independent blood test. But this record contains no evidence the jail foreclosed a reasonable opportunity for Larson to obtain an additional blood test. *See Stutlien,* 505 N.W.2d at 746 (no prejudice where detainee failed to show he was denied opportunity to obtain independent test). Larson used a telephone to call a friend and could have called an attorney. *See Thompson,* 520 N.W.2d at 584 (no actual prejudice where detainee made no effort to contact attorney).

[¶ 14] Larson argues his detention kept him from finding witnesses who could have testified about his level of impairment before Trooper King arrested him. We do not understand how being detained kept Larson from later locating the witnesses who had observed him *before* his arrest. Moreover, Larson has not demonstrated to us how the observations of other persons would have aided him when his blood-alcohol content tested over the legal limit. *See Thompson,* 520 N.W.2d at 584 (evidence insufficient to support finding of actual prejudice where no independent evidence supported inference that "observance by friends would have been beneficial"). We conclude that Larson's detention did not deny him a fair hearing.

 [¶ 15] Larson argues we should reverse his license suspension because his detention demonstrates Stutsman County continues a systematic disregard for the law of bail and detoxification. *See Erdelt,* 513 N.W.2d at 86. In that case, even though we found no actual prejudice, we dismissed a criminal charge of driving under the influence because the Stutsman County Correctional Center was categorically detaining all intoxicated drivers for eight hours without an individualized determination of the need to do so. *Id.* We once again concluded that detention was improper without that individualized determination by the arresting officer that the arrestee posed a danger to himself or others. *Id.* Here, the hearing officer found Trooper King made the individualized determination that Larson was a danger to himself, and the evidence supports that finding. We conclude Larson's detention did not result from a systematic disregard for the law.

[¶ 16] We affirm the agency's suspension of Larson's driving license.

[¶ 17] VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.