1998 ND 172

David DWORSHAK, Petitioner and Appellee,

v.

Marshall W. MOORE, Director, North Dakota Department of Transportation, Respondent and Appellant.

Civil No. 980086.

Supreme Court of North Dakota.

Sept. 15, 1998.

**800**

Andrew Moraghan (argued), Assistant Attorney General, Attorney General's Office, Bismarck, for respondent and appellant.

William A. Herauf (argued), of Reichert & Herauf, P.C., Dickinson, for petitioner and appellee.

MARING, Justice.

[¶ 1] The North Dakota Department of Transportation (the Department) appeals a district court judgment that reversed a Department decision to revoke David Dworshak's driving privileges for his refusal to be chemically tested after his arrest for driving under the influence of alcohol. We reverse and remand for reinstatement of the administrative driving revocation.

I

[¶ 2] On July 25, 1997, at 12:58 a.m., a Dickinson Police Officer stopped a vehicle driven by David Dworshak for erratic driving. As the officer called in the stop to the dispatcher, Dworshak got out of his vehicle and started walking toward the house in front of which he had stopped. The officer walked after Dworshak and asked him to step back to the patrol car. While walking back to the patrol car, the officer noticed the strong odor of an alcoholic beverage on Dworshak's breath. Dworshak failed three field sobriety tests, and the officer subsequently arrested Dworshak for driving under the influence of alcohol.

[¶ 3] The officer transported Dworshak to a Dickinson hospital for a blood test. At the hospital, the officer informed Dworshak of the implied consent law. Dworshak requested to speak to an attorney and was permitted to do so. Dworshak subsequently refused to submit to the blood test. The officer then transported Dworshak to the law enforcement center, gave him a summons, and required him to surrender his driver's license. Dworshak was thereafter released from custody. Within approximately fifteen minutes after his release, the officer realized he forgot to issue Dworshak a temporary operator's permit. That same night the officer filled out the Report and Notice, which also contained the Temporary Permit.

[¶ 4] The officer then attempted to track Dworshak down to issue the temporary operator's permit, but his efforts were hampered by Dworshak's failure to provide a current address on his driver's license. The officer testified he also made some unstructured attempts to locate Dworshak in Dickinson. On August 15, 1997, the officer finally located Dworshak and served the Report, Notice, and Temporary Permit, which notified Dworshak the Department intended to revoke his driver's license. This occurred twenty-one days after the officer made the initial arrest and took Dworshak's license. Dworshak timely requested a hearing.

[¶ 5] On September 12, 1997, an administrative hearing was held where evidence revealed Dworshak had a prior 1996 implied consent violation. Based upon all the evidence presented at the hearing, the hearing officer revoked Dworshak's driving privileges for two years. Dworshak appealed the deci-

sion to the district court, which reversed the administrative revocation. The Department appeals to this Court.

## II

▮▮▮ [¶ 6] The Administrative Agencies Practice Act, N.D.C.C. ch 28–32, governs review of an administrative decision to suspend or revoke a driver's license. *Presteng v. Director, North Dakota Dep't of Transp.,* 1998 ND 114, ¶ 5, 579 N.W.2d 212. We examine the record compiled before the agency, and we review the agency's decision, not the district court's decision. *Greenwood v. Moore,* 545 N.W.2d 790, 793 (N.D.1996). We must affirm the agency's decision unless:

> 1) a preponderance of the evidence does not support the agency's findings; 2) the agency's findings of fact do not support its conclusions of law and its decision; 3) the agency's decision violates the constitutional rights of the appellant; 4) the agency did not comply with the Administrative Agencies Practice Act in its proceedings; 5) the agency's rules or procedures have not afforded the appellant a fair hearing; or 6) the agency's decision is not in accordance with the law.

*Id.*

▮▮▮ [¶ 7] "This court exercises restraint when it reviews the findings of an administrative agency; we do not substitute our judgment for that of the agency, but instead determine whether a reasonable mind could have determined that the factual conclusions were proven by the weight of the evidence presented." *Samdahl v. North Dakota Dep't. of Transp., Director,* 518 N.W.2d 714, 716 (N.D.1994).

[¶ 8] A motor vehicle operator on a highway in this state is deemed to have consented to a chemical test to determine his or her blood alcohol content if arrested for driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor. N.D.C.C. § 39–20–01; *see Krabseth v. Moore,* 1997 ND 224, ¶ 7, 571 N.W.2d 146. Although a driver may refuse to submit to chemical testing, the consequences for such refusal are set forth under N.D.C.C. § 39–20–04(1), which provides in relevant part:

> If a person refuses to submit to testing under section 39–20–01 or 39–20–14, none may be given, but *the law enforcement officer* shall immediately take possession of the person's operator's license if it is then available and *shall immediately issue to that person a temporary operator's permit* . . . . The temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke driving privileges in this state and of the hearing procedures under this chapter. The director, . . . shall revoke that person's license or permit to drive . . . subject to the opportunity for a prerevocation hearing and post-revocation review as provided in this chapter. In the revocation of the person's operator's license the director shall give credit for time in which the person was without an operator's license after the day of the person's refusal to submit to the test except that the director may not give credit for time in which the person retained driving privileges through a temporary operator's permit issued under this section or section 39–20–03.2. . . . (Emphasis added.)

[¶ 9] In this case, it is conceded Dworshak did not "immediately" receive his temporary operator's permit after the police officer took possession of his driver's license; indeed, a period of twenty-one days passed before Dworshak was issued his temporary operator's permit. We have stated "[t]he jurisdiction of an administrative agency is dependant upon the terms of the statute and must meet at least the basic mandatory provisions of the statute before jurisdiction is established." *Schwind v. Director, North Dakota Dep't. of Transp.,* 462 N.W.2d 147, 150 (N.D.1990). The issue we face, therefore, is whether the failure of the officer to comply with N.D.C.C. § 39–20–04(1), deprives the Department of jurisdiction to revoke Dworshak's driving privileges.

### A. Jurisdiction

[¶ 10] In *Samdahl,* we dealt with a police officer's failure to "immediately" take possession of an operator's license and issue a temporary permit under N.D.C.C. § 39–20–03.1. 518 N.W.2d at 715, 717. The relevant language of § 39–20–03.1(1) and § 39–20–

04(1) is nearly identical; the only difference is that the former is triggered when a person fails one of the various chemical tests to determine blood alcohol content, while the latter is triggered when a person refuses to submit to any testing. *Compare* N.D.C.C. § 39–20–03.1(1), *with* N.D.C.C. § 39–20–04(1). We will, therefore, give the same interpretive effect to N.D.C.C. § 39–20–04(1) as we have previously given to the relevant part of N.D.C.C. § 39–20–03.1(1). *Cf. Schwind,* 462 N.W.2d at 150 (stating "[t]he language in section 39–20–04.1 is consistent with the language in section 39–20–03.1.").

[¶ 11] In *Samdahl,* the driver, Samdahl, was arrested on February 17, 1993, for driving under the influence. 518 N.W.2d at 715. On February 23, 1993, the state toxicologist report reported an alcohol concentration of .24 percent. *Id.* It was not until thirty-six days later, on March 31, 1993, that the Report and Notice was served on Samdahl, his driver's license was taken, and he was issued a temporary operator's permit. *Id.*

[¶ 12] At his administrative hearing, Samdahl argued the Department lacked jurisdiction "because 'immediately' after receiving the toxicologist results, a police officer neither took possession of [his] operator's license, nor issued him a temporary operator's permit as required under § 39–20–03.1." *Id.* at 717. The hearing officer rejected Samdahl's argument. *Id.* The district court was persuaded by the argument, however, and concluded § 39–20–03.1 "is a mandatory provision; that extending the time in excess of thirty days is not a minor violation of the statute; and therefore the Department ... is deprived of its jurisdiction." *Id.* at 716.

[¶ 13] This Court held although Samdahl did not "immediately" receive notice of suspension, the Department retained jurisdiction to suspend his license. We said:

> Although the jurisdiction of an administrative agency is dependent upon the terms of the statute and must meet at least the basic mandatory provisions of the statute before jurisdiction is established, the terms of the statute must be construed logically so as not to produce an absurd result.

When adherence to the letter of the law would cause an absurd result, we give effect to the legislative intent even though contrary to the letter of the law.

*Id.* at 717 (internal citation and quotation omitted). We, therefore, agreed with the Department "the language of § 39–20–03.1 regarding the giving of notice of intent to suspend is *not jurisdictional.*" *Id.* (emphasis added).

[¶ 14] In circumstances similar to *Samdahl,* we concluded in *Schwind* an officer's failure to forward to the Department a DUI arrestee's driver's license did not deprive the Department of jurisdiction over the arrestee's revocation hearing. 462 N.W.2d at 150. This Court reasoned:

> The clear legislative intent in enacting chapter 39–20, [N.D.C.C.], was for the protection of the public, i.e., to prevent individuals from driving while under the influence of intoxicants. Section 39–20–03.1, [N.D.C.C.], was enacted, in part, to help ensure that an individual who violated this chapter would not continue to drive. It would be an absurd result if we were to hold that an officer's failure to strictly comply with this portion of the statute had the opposite effect. While it is clear that section 39–20–3.1, [N.D.C.C.], requires the officer to forward the operator's license, the failure to do so does not destroy the Director's jurisdiction to suspend a violator's driving privileges. A contrary holding would defeat the Legislature's intent to protect the public from potential hazards posed by intoxicated drivers.

*Id.* (citations omitted).

■ [¶ 15] Under the guidance of *Samdahl* and *Schwind,* we refuse to interpret the plain meaning of N.D.C.C. § 39–20–04(1) as a "basic mandatory provision," which must be established in order to confer jurisdiction on the Department. We, therefore, conclude the officer's failure to comply with the "immediacy" requirement in § 39–20–04(1) is not jurisdictional and does not necessarily deprive the Department of authority to revoke an operator's driving privileges.[1]

---

1. In *Madison v. North Dakota Dep't. of Transp.,* 503 N.W.2d 243, 246–47 (N.D.1993), we

"warned that conduct which is 'potentially prejudicial' to the accused, if 'commonplace,' may

### B. Due Process

[¶ 16] Our previous cases in this area do establish, however, that if a variation in administrative procedure by a law enforcement officer causes prejudice to the defendant, the Department's jurisdiction may be defeated. *See Samdahl*, 518 N.W.2d at 717 ("The particular facts of this case do not raise due process concerns. This is not a case where the defendant was harmed or prejudiced by a time delay in notification."); *Sabinash v. Director, Dep't of Transp.*, 509 N.W.2d 61, 64 (N.D.1993) (defendant "suffered no adverse consequences from the oversight" where there was no evidence he "was stopped by law enforcement officers while driving with this temporary operator's permit ... [or] that he refrained from driving because of the permit's ambiguity"); *Schwind*, 462 N.W.2d at 151 ("[defendant] had full notice and knowledge of the administrative proceedings and has not been shown to have been prejudiced by the alleged failure to submit the license.").

[¶ 17] We have generally said, however, this Court will not reverse without a showing of prejudice from delay where there is no statutory remedy specified for an agency's failure to meet a time limit. *Greenwood*, 545 N.W.2d at 795–96. In other words, where the administrative statute provides a remedy for the agency's failure to meet a time limit, we need not reach the issue of prejudice. Here, N.D.C.C. § 39–20–04(1) does provide a remedy for the situation where there is a delay in time between taking possession of an operator's license and the issuance of a temporary operator's permit. Section 39–20–04(1), N.D.C.C., states,

> In the revocation of the person's operator's license the director *shall give credit for time in which the person was without an operator's license after the day of the person's refusal* to submit to the test except that the director may not give credit for time in which the person retained driving privileges through a temporary operator's permit issued under this section or section 39–20–03.2.[2] (Emphasis added.)

[¶ 18] We, therefore, conclude the appropriate remedy for the officer's delay in issuing Dworshak a temporary operator's license is not avoidance of license revocation for his refusal to submit to a chemical test; but rather, Dworshak should receive a credit for the twenty-one days he was without his operator's license.

### C. Timeliness of Hearing

[¶ 19] Finally, Dworshak argues his September 12, 1997, administrative hearing was not timely held. Dworshak first argues his hearing was untimely because it was not held within twenty-five days after the date of issuance of his temporary operator's permit on August 15, 1997.

[¶ 20] Under N.D.C.C. § 39–20–05(1) the "hearing must be held within twenty-five days after the date of issuance of the temporary operator's permit, but *the hearing officer may extend the hearing to within thirty days after the issuance of the temporary operator's permit to accommodate efficient scheduling of hearings.*" (Emphasis added.)

---

warrant reversal." We have also stated that "[w]hen 'systematic disregard of law' by a governmental agency becomes evident, a court may reverse a decision in favor of the government to prophylactically ensure that the government 'acts consistently and predictably in accordance with the law.'" *Greenwood*, 545 N.W.2d at 793 (citing *Madison*, 503 N.W.2d at 246–47). We note here the "immediacy" language of N.D.C.C. §§ 39–20–03.1 and –04(1) has now twice been litigated on appeal due to a law enforcement officer's delay in issuing a temporary operator's permit. In the future, we strongly encourage the Department to "enforce the immediacy requirement of the[se] statute[s] to ensure diligent conduct of law enforcement and to avoid 'systematic disregard of law.'" *Samdahl*, 518 N.W.2d at 719 (Levine, J., dissenting) (citation omitted).

2. It should be noted although our Court in *Samdahl* reached the issue of prejudice, Samdahl retained his driver's license until served with a temporary operator's permit. *Samdahl*, 518 N.W.2d at 715, 717. As a result, we did not have the opportunity to consider the statutory remedy language of N.D.C.C. § 39–20–04(1) providing a credit for time the driver is "without an operator's license after the day of the person's refusal to submit" to chemical testing. We note in *Krabseth*, 1997 ND 224, ¶ 18, 571 N.W.2d 146, we stated "the Legislature provided no remedy for an officer failing to immediately issue a temporary operator's permit...." Properly read, that statement is accurate in the context of the underlying cases it was discussing. *See id.* (discussing *Samdahl* and *Schwind*).

Although Dworshak does not dispute the fact the hearing was held within thirty days after he was issued his temporary operator's permit, he complains "there is nothing in the record that indicates that there is a reason to go beyond the 25 days so as to allow the extension to 27 days." Section 39–20–05(1) does not, however, require a greater showing than scheduling difficulties in order for the hearing officer to extend the hearing from within twenty-five to within thirty days of issuance of the temporary operator's permit. *See Greenwood,* 545 N.W.2d at 796 (discussing the "appropriate standard for excusing the delay of a license suspension hearing" beyond the twenty-five and thirty day periods). The hearing officer stated in his decision that the "administrative hearing has been conducted beyond the statutory 25 days, but within the statutory 30 days due to scheduling difficulties." We, therefore, conclude the hearing officer's extension of Dworshak's hearing date did not violate N.D.C.C. § 39–20–05(1).

[¶ 21] Second, Dworskak argues his hearing was untimely because it was not held within thirty days after he surrendered his driver's license on July 25, 1997. The plain language of N.D.C.C. § 39–20–05(1), however, provides that the hearing must be within twenty-five or thirty days "after the date of issuance of the temporary operator's permit[.]" Because Dworshak's hearing was held on September 12, 1997, twenty-seven days after the issuance of his temporary operator's permit, we conclude his hearing was timely held under N.D.C.C. § 39–20–05(1).

### III

[¶ 22] We reverse the district court's decision and remand to the Department for a reinstatement of the license revocation allowing a twenty-one day credit for the time Dworshak was without his operator's license.

[¶ 23] VANDE WALLE, C.J., NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

