2004 ND 93

**Thad James WETSCH, Petitioner and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

No. 20030254.

Supreme Court of North Dakota.

May 5, 2004.

Justin D. Roness (argued), Timothy Q. Purdon (appeared), and Thomas A. Dickson (on brief), Dickson & Purdon, Bismarck, ND, for petitioner and appellant.

Andrew Moraghan, Assistant Attorney General, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1] Thad James Wetsch appeals from a district court judgment affirming an administrative hearing officer's revocation of Wetsch's driving privileges for one year. We affirm.

I.

[¶ 2] On May 10, 2003, Officer Tim Bleth of the Mandan Police Department clocked Wetsch's vehicle driving 36 miles per hour in a 25 mile per hour zone. Officer Bleth continued to follow the vehicle, which reached speeds of over 50 miles per hour. The vehicle eventually stopped. When Officer Bleth approached, both driver and passenger were standing outside the vehicle. Bleth recognized Wetsch as the driver.

[¶ 3] As the officer questioned Wetsch, he detected an odor of alcohol coming from his breath. Wetsch admitted he had consumed alcohol that evening. Officer Bleth had Wetsch perform three field sobriety tests, all of which Wetsch failed. Officer Bleth issued the implied consent advisory. Wetsch refused to submit to an onsite screening test, but agreed to submit to a blood test. Officer Bleth placed Wetsch under arrest for driving under the influence of intoxicating liquor and transported him to the Morton County Law Enforcement Center.

[¶ 4] Mandan Police Department policy requires a registered nurse or other medically qualified individual draw blood at the Morton County Law Enforcement Center in the Intoxilyzer room. At the time of Wetsch's arrest, a registered nurse was present at the Law Enforcement Center capable of administering the test. Wetsch refused to allow the nurse to draw blood stating he preferred to have the blood drawn in a medical environment such as a hospital.

[¶ 5] At the administrative hearing, the hearing officer found reasonable grounds existed for the officer to believe Wetsch had committed a moving violation, and Wetsch had been driving under the influence of intoxicating liquor. The hearing officer concluded Wetsch refused to submit to an onsite screening test. The hearing officer concluded it was reasonable for the Mandan Police Department to draw Wetsch's blood at the Law Enforcement Center because the procedure was to be performed by a registered nurse who was medically qualified to draw blood. The hearing officer further concluded Wetsch did not have a proper basis to refuse to submit to the blood test and revoked his driving privileges for one year.

[¶ 6] Wetsch appealed the hearing officer's decision to the district court. The district court affirmed the hearing officer's decision. Wetsch appeals to this Court.

II.

[¶ 7] The first issue is whether Wetsch's refusal to submit to an onsite

screening test justifies revocation of his license for one year. At the time of his arrest, Wetsch refused to submit to an onsite screening test, the SD–2 test. Under the plain language of N.D.C.C. § 39–20–14, refusal to submit to a field screening test violates North Dakota's implied consent law:

> Any person who operates a motor vehicle upon the public highways of this state is deemed to have given consent to submit to an onsite screening test or tests of the person's breath for the purpose of estimating the alcohol content of the person's blood upon the request of a law enforcement officer who has reason to believe that the person committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol.

The punishment for refusing consent to any of the chemical tests is revocation of an individual's license for one year on a first offense. N.D.C.C. § 39–20–04(1)(a). The plain language of the statute provides a basis for revoking Wetsch's license. An individual's refusal to submit to a chemical screening is a violation of the statute. Wetsch's initial refusal to submit to an onsite chemical screening is alone sufficient to revoke his license for one year. Based on Wetsch's refusal to submit to the SD–2 test, the hearing officer had sufficient grounds to revoke Wetsch's driver's license for one year.

### III.

■ [¶ 8] The next issue raised by Wetsch is whether his refusal to submit to a blood test when drawn by a medical profession in a law enforcement environment, rather than in a hospital, was unreasonable. We hold his refusal was unreasonable under these circumstances.

■ [¶ 9] An appeal from the district court's review of a hearing officer's decision of license suspension is governed by the Administrative Agencies Practice Act. N.D.C.C. ch. 28–32. This Court does not review the district court's decision, but reviews the record and decision rendered by the agency. *Kouba v. N.D. Dep't of Transp.*, 1999 ND 233, ¶ 4, 603 N.W.2d 696 (citing *Dworshak v. Moore*, 1998 ND 172, ¶ 6, 583 N.W.2d 799). The North Dakota Century Code provides for judicial review of agency decisions:

> A judge of the district court must review an appeal from the determination of an administrative agency based only on the record filed with the court. After a hearing, the filing of briefs, or other disposition of the matter as the judge may reasonably require, the court must affirm the order of the agency unless it finds that any of the following are present:
>
> 1. The order is not in accordance with the law.
>
> 2. The order is in violation of the constitutional rights of the appellant.
>
> 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
>
> 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
>
> 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
>
> 6. The conclusions of law and order of the agency are not supported by its findings of fact.
>
> 7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

If the order of the agency is not affirmed by the court, it must be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the order of the court.

N.D.C.C. § 28–32–46.

■ [¶ 10] This Court's review of an agency decision is limited. *Larson v. N.D. Dep't of Transp.*, 1997 ND 114, ¶ 9, 564 N.W.2d 628 (citing *McPeak v. Moore*, 545 N.W.2d 761, 762 (N.D.1996)). A hearing officer's findings of fact are supported by a preponderance of the evidence if they were reasonably made from the weight of the entire evidence. *Larson*, at ¶ 9 (citing *Pavek v. Moore*, 1997 ND 77, ¶ 4, 562 N.W.2d 574).

[¶ 11] In this case, Wetsch claims that his request to have blood drawn at a medical facility, rather than at the Intoxilyzer room at the Morton County Law Enforcement Center, is reasonable and supported by case law. The applicable North Dakota statute provides:

Only an individual medically qualified to draw blood, acting at the request of a law enforcement officer, may withdraw blood for the purpose of determining the alcohol, drug, or combination thereof, content therein. The state toxicologist shall determine the qualifications or credentials for being medically qualified to draw blood, and shall issue a list of approved designations including medical doctor and registered nurse. This limitation does not apply to the taking of breath, saliva, or urine specimen. The person tested may have an individual of the person's choosing, who is medically qualified to draw blood, administer a

chemical test or tests in addition to any administered at the direction of a law enforcement officer with all costs of an additional test or tests to be the sole responsibility of the person charged. The failure or inability to obtain an additional test by a person does not preclude the admission of the test or tests taken at the direction of a law enforcement officer. Upon the request of the person who is tested, a copy of the operational checklist and test record of a breath sample test or analytical report of a blood, urine, or saliva sample test taken at the direction of the law enforcement officer must be made available to that person by the law enforcement agency that administered the test or tests.

N.D.C.C. § 39–20–02. The plain language of the statute provides that a medically qualified person may draw blood for the purpose of determining the alcohol content and further indicates a registered nurse is medically qualified to make the draw. *Id.*

[¶ 12] Wetsch argues the United States Supreme Court decision in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) supports his right to have blood drawn in a medical facility rather than at the Law Enforcement Center. We disagree.

[¶ 13] In *Schmerber*, an individual was arrested for suspicion of driving under the influence, but had to be taken immediately to a hospital for medical treatment. *Id.* at 758–59, 86 S.Ct. 1826. Upon arrival at the hospital, the arresting officer requested the physician draw a blood sample for alcohol testing. *Id.* at 759, 86 S.Ct. 1826. The defendant argued the blood draw was an unreasonable search and seizure because it was completed without a warrant. *Id.* The Court held that the draw was reasonable because extraction of blood for alcohol testing is effective and the proce-

dure involves little to no risk. *Id.* at 771–72, 86 S.Ct. 1826.

[¶ 14] Wetsch relies heavily on the *Schmerber* case to argue it is reasonable to demand that blood may be drawn only in a medical facility and may not be drawn in a law enforcement setting. This reliance is misplaced. In *Schmerber*, the Court ultimately held that extracting a blood sample from an individual suspected of driving under the influence was proper because it was performed in a reasonable manner. *Schmerber*, at 771, 86 S.Ct. 1826. Wetsch argues the Court held that for an extraction to be reasonable it must take place in a medical facility. This is an improper characterization of the ruling. In *Schmerber*, the Court stated:

> [T]he record shows that the test was performed in a reasonable manner. Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain.

*Schmerber*, at 771–72, 86 S.Ct. 1826.

[¶ 15] Wetsch attempts to use the suggestion by the *Schmerber* Court that if a police officer took the blood in a police facility, such procedure may have an effect on whether an individual's objection to the withdrawal is reasonable. However, this suggestion does not provide the requisite inference for Wetsch to successfully argue the Supreme Court established a two-prong test for reasonable blood extraction.

The Court merely speculated that if blood were to be drawn in a law enforcement setting by a police officer, not a medical professional, then personal risk of infection and pain may be too great. *Schmerber*, at 771–72, 86 S.Ct. 1826.

[¶ 16] Wetsch argues *Schmerber* holds there is a two-step process which must be followed when law enforcement officials collect blood. First, the blood must be drawn by a person medically qualified. Second, the blood must be drawn in a medical setting, such as a hospital. However, other jurisdictions have considered this issue in the context of *Schmerber* and expressly rejected the notion that blood must be drawn in a hospital setting. *See State v. Sickler*, 488 N.W.2d 70, 73 (S.D. 1992) (rejecting the argument that blood tests must be performed in a hospital in order to qualify as reasonable); *see also State v. Daggett*, 2002 WI App 32, ¶ 15, 640 N.W.2d 546 (holding that drawing blood in a non-medical environment is reasonable under *Schmerber*).

[¶ 17] Wetsch's reliance on *Schmerber* to argue that a blood draw incident to arrest must be performed by a medically qualified individual in a hospital is incorrect. In *Schmerber*, the Court did not establish a requirement that blood be drawn in a hospital in order to be reasonable. The *Schmerber* Court merely recognized that there may be circumstances where a blood draw may be unreasonable because of an "unjustified element of personal risk of infection and pain." *Schmerber*, at 772, 86 S.Ct. 1826. This record is lacking any suggestion that such risks existed. Wetsch testified at the hearing and the hearing officer asked him to "be more specific about what concerned [him]." Wetsch responded, "[t]he entire process. The entire process of it not being a hospital, sanitary condition." Our legislature has addressed the concerns announced in

*Schmerber* for risk of infection and pain by requiring a medically qualified person make the draw. When a medically qualified person is available and the record shows no other evidence of a justifiable reason to refuse a blood test, the demand to be taken to a hospital as a condition for the draw constitutes a refusal under N.D.C.C. ch. 39–20.

### IV.

[¶ 18] We affirm.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.