Jeff JOHNSON, Claimant and Appellant,

v.

**THE NORTH DAKOTA WORKERS'
COMPENSATION BUREAU,**
Appellee,

and

Cross Country Courier, Respondent.

Civ. No. 950098.

Supreme Court of North Dakota.

Oct. 31, 1995.

Kathryn L. Dietz of Dietz & Little, Bismarck, for Claimant and Appellant.

Brent J. Edison, Special Assistant Attorney General of Zuger, Kirmis & Smith, Bismarck, for Appellee.

LEVINE, Justice.

Jeff Johnson appeals from a district court judgment affirming a North Dakota Workers' Compensation Bureau (Bureau) decision denying him additional benefits. We affirm.

Johnson was injured November 4, 1992, when he slipped and fell while working as a driver and delivery person for Cross Country Courier in Bismarck. He filed a claim for workers' compensation benefits on November 10, 1992, which the Bureau approved on February 17, 1993. On November 14, 1992, Johnson's employer dismissed him as part of a company reduction-in-force. Johnson returned to work part-time in March 1993. In August 1993, Professional Rehabilitation Management employee Randi Kreeger became Johnson's vocational consultant. She met with Johnson's employer August 23, 1993, and they worked together to develop a job that would fit Johnson's physical limitations. On August 30, 1993, Cross Country Courier rehired Johnson as a full-time warehouse person.

Kreeger filed a vocational consultant's report with the Bureau on October 29, 1993, which provided a medical assessment, examined Johnson's employment and educational history, and listed his transferable skills. The report recommended that Johnson "[r]eturn to a modified position—any employer" as the most appropriate rehabilitation option under section 65–05.1–01(4), NDCC. Kreeger gave two reasons for choosing the modified work option. She explained in the report that Johnson was not able to return to his previous job because of his physical limitations and restrictions. She also reported that his employer was willing to offer him a modified position at a wage identical to the wage he earned before his injury. The report stated that Johnson had been offered a light duty delivery driver position, and provided a detailed job description for this position. It also noted, however, that Johnson had actually returned to work as a light duty warehouse person.

The Bureau recommended approval of Kreeger's report on December 3, 1993, and sent Johnson a Notice of Intent to Discontinue Benefits on December 8, 1993. On December 27, 1993, the Bureau issued an order denying Johnson further benefits. On January 3, 1994, Johnson submitted a request for rehearing of the order denying benefits. In addition, on December 28, 1993, Johnson filed a reapplication for benefits with the Bureau. The Bureau issued an order denying Johnson's reapplication on January 31, 1994. On February 27, 1994, Johnson submitted a request for rehearing of this order. Meanwhile, Johnson quit work on January 26, 1994.

The Bureau held a hearing on Johnson's two claims for benefits on July 12, 1994, which resulted in an order denying further benefits. Johnson appealed to the district court, which affirmed the order. Johnson then filed this appeal from the district court judgment.

 When a party appeals a district court review of an administrative agency decision, we review the decision of the agency, not of the district court. *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815 (N.D. 1986). We will reverse an agency decision if it is not in accordance with the law. *See Erickson v. Director, N.D. Dept. of Transp.*, 507 N.W.2d 537 (N.D.1993).

 Johnson argues that the Bureau did not follow the law when it denied him further benefits. He argues that the vocational consultant's report, prepared for the Bureau by Kreeger, did not meet statutory requirements. He also argues that the Bureau applied the wrong statutory test when it denied him benefits. We must interpret the applicable statutes to determine whether the Bureau followed the law. Questions requiring statutory interpretation are questions of law. *Erickson*, 507 N.W.2d at 539. Questions of law are fully reviewable on appeal. *Newland v. Job Service North Dakota*, 460 N.W.2d 118 (N.D.1990).

██ Johnson's first argument is that the vocational consultant's report was deficient because it did not specifically assess the physical demands of his particular job, light duty warehouse person. Johnson argues that the vocational consultant had a statutory duty to make such an assessment, and to include it in the report. The record is clear that Kreeger did, in fact, assess the physical demands of the warehouse job. Kreeger had Johnson's Functional Capacity Evaluation (FCA) in hand when she met with Johnson's employer about putting Johnson to work full-time. Using the FCA, Kreeger and the employer developed Johnson's light duty warehouse job to meet Johnson's specific physical restrictions and limitations. Once Johnson started work, Kreeger kept in touch with him to see whether he was tolerating the job. Kreeger testified about her assessment of the warehouse job. She did not, however, include this assessment in her report. Instead, she included an assessment of the light duty driver position, which she testified also fit Johnson's restrictions and limitations and was chosen as "the vocational goal." [1]

██ The vocational consultant's report is a tool that helps the Bureau determine what rehabilitation services it should provide to the injured worker. *See* NDCC § 65–05.1–01 [outlining the purpose and goals of North Dakota's worker rehabilitation program and describing the tools used to achieve these aims]. Section 65–05.1–02.1, NDCC, directs the vocational consultant to "review all records, statements, and other pertinent information and prepare a report to the bureau and employee." In the report, the vocational consultant "must" identify the worker's "first appropriate rehabilitation option." *Id.* Section 65–05.1–01(4), NDCC, states the possible rehabilitation options:

"a. Return to the same position.

b. Return to a modified position.

c. Return to a related occupation in the local job pool which is suited to the employee's education, experience, and marketable skills.

1. Kreeger testified that the light duty driver position was available and that Cross Country Courier was willing to offer the job to Johnson. Johnson could not take the light duty driver position, however, because he was temporarily uninsurable due to a driving under the influence conviction.

d. Return to a related occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills.

e. On-the-job training.

f. Short-term retraining of fifty-two weeks or less.

g. Long-term retraining of one hundred four weeks or less.

h. Self-employment."

The report must not only identify the first rehabilitation choice, it must also contain "findings of why a higher listed priority, if any, is not appropriate." NDCC § 65–05.1–02.1(1)(b). If return to a job pool, on-the-job training, retraining, or self-employment is selected as a rehabilitation option, the report must contain additional information pertinent to the option selected. NDCC § 65–05.1–02.1(2).

Johnson argues that section 65–05.1–02.1, NDCC, and section 65–05.1–02(7), NDCC, read together, require the vocational consultant's report to include an assessment of a worker's particular job, here, the warehouse position. Section 65–05.1–02(7) provides a general description of the vocational consultant's duties. It instructs the Bureau to appoint vocational consultants on a case-by-case basis to assess "the worker's transferable skills, employment options, and the physical demand characteristics of the worker's employment options." *Id.* The vocational consultant also determines which rehabilitation option specified under section 65–05.1–01, NDCC, "will enable the worker to return to employment within the physical restrictions and limitations provided by the medical assessment team." *Id.* Section 65–05.1–02(7) further instructs the vocational consultant to "issue to the bureau a report as provided in section 65–05.1–02.1." *Id.*

 Section 65–05.1–02.1 sets out specific guidelines for the vocational consultant's report. Nothing in section 65–05.1–02.1 requires the vocational consultant to include in the report an assessment of the worker's specific job. Instead, section 65–05.1–02(7) essentially instructs the vocational consultant to assess the worker's job options in light of

the worker's restrictions and limitations. If a driver's job requires comparable duties, qualifications and skills, physical and mental, as a warehouse person's job, it matters not that one is identified in the report, but not the other. The required statutory exercise is to identify the category of work in which the worker can fairly engage. When we construe a statute, we must presume "that the Legislature intended all that it said, and that it said all that it intended to say." *City of Dickinson v. Thress,* 69 N.D. 748, 290 N.W. 653, 657 (1940). We can infer the legislature wanted the vocational consultant to make an assessment of the "physical demand characteristics of the worker's employment options." NDCC § 65–05.1–02(7). When that assessment is made for one kind of employment option and the functional requirements of that position are interchangeable with another particular job description, the statutory requirement to assess employment options is fulfilled. We therefore hold that the report complied with the statutory requirements.

 Johnson next argues that the vocational consultant's report was not submitted within the statutory time limits. The report is "due within sixty days from the initial referral for rehabilitation assessment" unless a retraining option is chosen. NDCC § 65–05.1–02.1(3). A Professional Rehabilitation Management counselor met with Johnson February 23, 1993, to perform the initial intake assessment. The vocational consultant's report, however, was not filed until October 29, 1993—more than 240 days after the initial rehabilitation assessment. Clearly, the statutory report filing deadline was violated.

 Chapter 65–05.1, however, does not set out a remedy that applies when one of its provisions is violated. When no statutory remedy is provided for a statutory violation, we look to whether the victim of the violation was prejudiced. *See* Rule 61, NDRCivP [instructing courts to disregard errors which do not affect "substantial rights"]. Ordinarily, absent a showing of prejudice, a statutory violation is not reversible error.[2] *See Keyes v. Amundson,* 343

---

2. We will not let an agency's statutory violation go unsanctioned if the violation was a result of

N.W.2d 78 (N.D.1983). Johnson has not shown that he was prejudiced by the delayed filing of the vocational consultant's report. Absent such a showing, the error is harmless.

■ Johnson's final argument is that the hearing officer applied the wrong statutory test when he found Johnson ineligible for further benefits. Specifically, Johnson argues that he performed an unsuccessful good faith work trial and was entitled to reinstatement of benefits and reevaluation by the Bureau. *See* NDCC § 65–05.1–04(4). Johnson claims the hearing officer erred by requiring Johnson to prove that "he sustained a significant change in his medical condition attributable to his work injury."

■ Section 65–05.1–04(4), NDCC, requires an employee who returns to modified work, as Johnson did, to make a "good faith work trial." If the work trial is unsuccessful due to the employee's injury, the Bureau is required to "reevaluate the employee's vocational rehabilitation claim." *Id.* The burden of proving that the work trial was in good faith, and that the work trial was unsuccessful due to prior work injury, is on the employee. *Id.* On the other hand, section 65–05–08(2), NDCC, provides that when a worker *reapplies* for benefits, such benefits "must be reinstated upon a finding that ... [t]he employee has sustained a significant change in medical condition shown by a preponderance of the evidence."

Two Bureau orders were at issue when the hearing officer held the rehearing on July 12, 1994, and different standards apply to each. The Bureau denied Johnson further benefits on December 27, 1993, because he had returned to modified work and was earning the same income he made before his injury. The Bureau denied Johnson's reapplication for benefits on January 31, 1994, because Johnson had not shown a significant change in medical condition due to his work injury.

In denying Johnson's claim for further benefits (the subject of the Bureau's December ber order), the hearing officer found, in effect, that Johnson did not make a "good faith work trial." The hearing officer cited evidence indicating that Johnson quit work for personal reasons, not because of his prior injury. The hearing officer also found that Johnson did not prove that the physical requirements of his job "were not in keeping with [his] physical capacity to perform." These findings show that Johnson did not meet his burden of showing that the work trial was unsuccessful due to his prior work injury as required by section 65–05.1–04(4), NDCC.

In considering Johnson's reapplication for benefits (the subject of the Bureau's January order), the hearing officer required Johnson to prove that "he sustained a significant change in his medical condition attributable to his work injury." This test, and not the "good faith work trial" standard, applies to cases in which the worker has reapplied for benefits. *See* NDCC § 65–05–08(2). We conclude the hearing officer did not err when he applied the "medical condition" test in denying Johnson's reapplication for benefits.

We hold that the hearing officer applied the proper legal standards when he determined that Johnson was ineligible for further benefits and when he denied Johnson's reapplication for benefits. We reject Johnson's arguments to the contrary.

The district court's judgment affirming the Bureau's order is affirmed.

VANDE WALLE, C.J., and SANDSTROM, MESCHKE and NEUMANN, JJ., concur.

systemic disregard of the law. *Madison v. N.D. Dept. Transp.,* 503 N.W.2d 243 (N.D.1993). When agency conduct is prejudicial to the integrity of the system, and we find such conduct to have been commonplace, reversal may be warranted. *Id.* Johnson made no showing of systemic disregard of the law by the Bureau.