1998 ND 221

Glen SCOTT, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee,

and

Koch Pipeline Co., Respondent.

Civil No. 980188

Supreme Court of North Dakota.

Dec. 22, 1998.

---

Kathryn L. Dietz, of Dietz, Little & Haas, Bismarck, ND, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, Bismarck, ND, for appellee.

NEUMANN, Justice.

[¶ 1] Glen Scott appeals from a judgment affirming the order of the North Dakota Workers Compensation Bureau denying further benefits. We conclude the Bureau improperly allowed ex parte contacts between its outside counsel and the Bureau officer who issued the decision in this case, and accordingly we reverse and remand.

I

[¶ 2] Scott suffered a work-related injury in March 1995 and sought workers compensation benefits. In May 1995, Scott and his wife purchased Knife River Trading Post, a combination convenience store, gas station, and restaurant. Scott has worked at the business since they purchased it.

[¶ 3] On August 9, 1995, the Bureau accepted Scott's claim and awarded disability benefits. Scott's former employer advised the Bureau by letter dated August 15, 1995, that Scott had purchased the convenience store and had been operating his own meat processing and catering business for several years. The Bureau did not contact Scott, but hired a private investigator. The investigator confirmed Scott was working at the business.

[¶ 4] From October 1995 to March 1996, the Bureau mailed "return to work" cards to Scott. Scott answered the questions on the cards, indicating he had not returned to work, and returned the cards to the Bureau. On April 19, 1996, the Bureau sent Scott a notice of intention to discontinue benefits, stating the Bureau had learned he was working and would terminate his benefits. An order terminating benefits was issued on June 7, 1996, finding Scott had made false statements regarding the claim.

[¶ 5] Scott requested a rehearing. A hearing was held before an administrative law judge (ALJ) on March 13, 1997. The ALJ concluded Scott's statements were inadvertent, not willful, and recommended reversal of the Bureau order terminating benefits. The Bureau rejected the ALJ's recommendations and, on July 3, 1997, issued its own findings of fact, conclusions of law, and order terminating Scott's benefits.

[¶ 6] Scott appealed to the district court. At the district court level, Scott challenged ex parte contacts between the Bureau's outside counsel and the Bureau's Director of Claims and Rehabilitation who had issued the July 3, 1997, final order. The record was supplemented with some documentation of these alleged contacts, but the Bureau refused to provide other requested documents. The district court eventually affirmed the Bureau's order.

II

[¶ 7] On appeal to this Court, Scott challenges various findings of fact and conclusions of law, and asserts the Bureau violated N.D.C.C. §§ 28–32–12.1 and 28–32–17(4) by allowing improper ex parte contacts between its outside counsel and the Bureau officer who issued the decision in the case.

██ [¶ 8] This case presents serious questions about an administrative agency's proper use of counsel after counsel has appeared at a hearing in a position adversarial to the claimant. The Bureau concedes that in this case, and as a matter of general practice, its outside counsel who appeared at the hearing would consult with the Bureau official who was to decide whether to accept or reject the ALJ's recommended decision. In this case, the record demonstrates the Bureau's outside counsel consulted with the Bureau's Director of Claims and Rehabilitation, advised the Director of Claims and Rehabilitation the ALJ's decision should be rejected, and drafted several versions of findings, conclusions, and orders for the Director of Claims and Rehabilitation to review. The final order of July 3, 1997, was drafted by the Bureau's

outside counsel and signed by the Bureau's Director of Claims and Rehabilitation. All these contacts and communications were without the knowledge or participation of Scott or his attorney; Scott received no notice of or copies of the Bureau's outside counsel's proposed findings, conclusions, and orders prior to issuance of the final order on July 3, 1997.

[¶ 9] Scott asserts these contacts, and the failure to document them in the record, violated the Administrative Agencies Practice Act, N.D.C.C. Ch. 28–32. At the time these contacts occurred,[1] N.D.C.C. § 28–32–12.1 provided, in part:

3. Unless required for the disposition of ex parte matters specifically authorized by statute, no party to a contested case proceeding, no person who has a direct or indirect interest in the outcome of the proceeding, no person allowed to participate in the proceeding, and no person who presided at a previous stage in the proceeding may communicate directly or indirectly in connection with any issue in that proceeding, while the proceeding is pending, with any agency head or hearing officer in the proceeding without notice and opportunity for all parties to participate in the communication.

. . . .

5. An agency head or hearing officer in a contested case proceeding who receives an ex parte communication in violation of this section shall place on the record of the pending matter all written communications received, all written responses to the communications, or a memorandum stating the substance of all oral communications received, all responses made, and the identity of each person from whom the person received an ex parte oral com-

munication, and shall advise all parties, interested persons, and other persons allowed to participate that these matters have been placed on the record. Any person desiring to rebut the ex parte communication must be allowed to do so, upon requesting the opportunity for rebuttal. A request for rebuttal must be made within ten days after notice of the communication.

Section 28–32–17(4)(i) and (k), N.D.C.C., provides the record of the proceedings must include:

i. Any recommended or proposed order, recommended or proposed findings of fact and conclusions of law, final order, final findings of fact and conclusions of law, or findings of fact and conclusions of law or orders on reconsideration.

. . . .

k. Matters placed on the record after an ex parte communication.

[¶ 10] These statutes unambiguously prohibit the procedure used by the Bureau in this case. The Bureau's outside counsel was a "person allowed to participate in the proceeding," and he directly communicated with the Director of Claims and Rehabilitation[2] about issues involved in the pending proceeding. In fact, the outside counsel admits he consulted with the Director of Claims and Rehabilitation about the ALJ's recommended decision, advised the Director of Claims and Rehabilitation to reject it, and then drafted the findings, conclusions, and order denying benefits signed by the Director of Claims and Rehabilitation on July 3, 1997. The clear intent of the statute is to prohibit ex parte contacts between the decision maker and persons who participated in the hearing or otherwise have an interest in the case. The Bureau's use of its outside counsel in this

---

1. The 1997 Legislative Assembly amended the statute, reflecting that "contested cases" are now called "adjudicative proceedings." *See* 1997 N.D. Sess. Laws Ch. 277, § 14.

2. Section 28–32–12.1(3), N.D.C.C., prohibits ex parte communications with an "agency head or hearing officer." The Bureau has not asserted the Director of Claims and Rehabilitation was not an agency head or hearing officer to whom

the statute applies. Nor has Scott challenged that officer's authority to issue the final order. Because the agency head is the person who is to reject or adopt the ALJ's recommended findings, conclusions, and order, N.D.C.C. § 28–32–13(3), the Director of Claims and Rehabilitation was acting as the agency head by delegation when he reviewed the ALJ's recommendations in this case.

case clearly violated that statutory proscription.

[¶ 11] The Bureau asserts its Director of Claims and Rehabilitation was allowed to consult with its outside counsel under N.D.C.C. § 28–32–12.1(2), which provided:

> When more than one person is the hearing officer in a contested case proceeding, those persons may communicate with each other regarding a matter pending before the panel. An agency head or hearing officer may communicate with or receive aid from staff assistants if the assistants do not furnish, augment, diminish, or modify the evidence in the record.

The intent of this provision is to ensure staff assistance is available for the decision maker. We do not believe it was intended to supersede the protections afforded by the specific provisions of N.D.C.C. § 28–32–12.1 which prohibit ex parte communications from persons who participated in the hearing.

[¶ 12] There are strong policy reasons for prohibiting ex parte communications between the attorney who represented the agency at an adversarial hearing and the agency decision maker. In *Camero v. United States,* 179 Ct.Cl. 520, 375 F.2d 777 (Ct.Cl.1967), the court held an agency decision was invalid where the attorney representing the agency communicated with the decision maker, advised him to reject the recommendation of a grievance committee, and participated in preparing the final decision. The court reasoned:

> [O]ne of the fundamental premises inherent in the concept of an adversary hearing, particularly if it is of the evidentiary type, is that neither adversary be permitted to engage in an *ex parte* communication concerning the merits of the case with those responsible for the decision.... It is difficult to imagine a more serious incursion on fairness than to permit the representative of one of the parties to privately communicate his recommendations to the decision makers. To allow such activity would be to render the hearing virtually meaningless.

*Camero,* 375 F.2d at 780–81 (citations omitted); *see also, e.g., Sullivan v. Department of the Navy,* 720 F.2d 1266, 1271 (Fed.Cir.1983);

*Koster v. United States,* 231 Ct.Cl. 301, 685 F.2d 407, 412 (Ct.Cl.1982); *Ryder v. United States,* 218 Ct.Cl. 289, 585 F.2d 482, 487 (Ct.Cl.1978); *New York State Inspection, Security and Law Enforcement Employees v. New York State Public Employment Relations Board,* 629 F.Supp. 33, 44–45 (N.D.N.Y. 1984); *Louisiana Pacific Corp. v. Koons,* 816 P.2d 1379, 1382 (Alaska 1991); 4 Jacob A. Stein et al., Administrative Law § 32.01[2][a][i] (1998).

[¶ 13] The Bureau nevertheless asserts the ex parte communications in this case were not improper, citing N.D.C.C. § 65–01–16(8):

> Rehearings must be conducted as hearings under chapter 28–32 to the extent the provisions of that chapter do not conflict with this section. The bureau may arrange for the designation of hearing officers to conduct rehearings and issue recommended findings, conclusions, and orders. In reviewing recommended findings, conclusions, and orders, the bureau may consult with its legal counsel representing it in the proceeding.

This provision was enacted by the 1997 Legislative Assembly, and applies only to claims filed after July 31, 1997. *See* 1997 N.D. Sess. Laws Ch. 532, §§ 1, 7. It clearly does not apply in this case.

[¶ 14] The Bureau asserts we may nevertheless look to the legislative history of N.D.C.C. § 65–01–16(8) to determine it was intended to clarify existing law, and demonstrates the legislature's intent to allow the ex parte contacts which occurred in this case. We disagree.

[¶ 15] It is presumed the legislature acts with a purpose and does not perform useless acts. *State v. Beilke,* 489 N.W.2d 589, 592 (N.D.1992); *State Bank of Towner v. Edwards,* 484 N.W.2d 281, 282 (N.D.1992). Thus, it is presumed a legislative enactment is intended to change existing law. *Heck v. Reed,* 529 N.W.2d 155, 161 (N.D.1995); *Beilke,* 489 N.W.2d at 592; *State Bank,* 484 N.W.2d at 282. However, when the clear purpose of an amendment to a statute is to merely clarify existing law, the policy expressed in the amendment may be

considered when construing rights under the original statute. *Effertz v. North Dakota Workers Compensation Bureau*, 525 N.W.2d 691, 693 (N.D.1994).

[¶ 16] The principle allowing consideration of a subsequent clarifying amendment does not apply under the facts in this case. The 1997 Legislature did not amend an *existing* statute with the express intent of clarifying that statute. Here, the legislature enacted a *new* statute in a different title of the Century Code. The existing statute remains in its original form. Under these circumstances, the 1997 enactment is not a "clarifying amendment," but is a new enactment which attempts to carve out an exception to the general rule of N.D.C.C. § 28–32–12.1(3).

[¶ 17] Prior to the 1997 amendment, the Bureau was clearly governed by the general rule of N.D.C.C. § 28–32–12.1(3), which prohibited the ex parte contacts in this case. The 1997 Legislature created a new provision in the Workers Compensation title of the Code, intended to allow the Bureau to consult with its attorneys when reviewing an ALJ's recommended decision. However, all other agencies remain subject to the proscriptions in N.D.C.C. § 28–32–12.1, which remains in effect. Under these circumstances, the 1997 enactment is not a clarifying amendment, but represents a clear intended change in the law. Accordingly, we do not consider the 1997 enactment or its legislative history when construing the Bureau's obligations under N.D.C.C. § 28–32–12.1 prior to the effective date of N.D.C.C. § 65–01–16(8).[3]

[¶ 18] We conclude the ex parte contacts between the Bureau's outside counsel and the Bureau's Director of Claims and Rehabilitation violated N.D.C.C. § 28–32–12.1(3).

### III

[¶ 19] Having concluded improper ex parte communications occurred in this case, we must consider the appropriate remedy. Section 28–32–12.1(6), N.D.C.C., provides for disqualification of the agency head or hearing officer who receives improper ex parte communications. That is an effective remedy if the agency head or hearing officer advises the parties of the improper communication prior to ruling on the case, as required by N.D.C.C. § 28–32–12.1(5). However, when the improper ex parte communications come to light only after the final agency decision has been issued, the "cat is out of the bag" and another remedy must be sought.

[¶ 20] In fashioning a remedy in this case, we are mindful of prior cases in which we have considered an agency's "systemic disregard" of the law. In a line of cases beginning with *Madison v. North Dakota Department of Transportation*, 503 N.W.2d 243 (N.D.1993), we have cautioned that conduct which is potentially prejudicial to an accused or claimant, if commonplace, may warrant reversal without a showing of actual prejudice. *See, e.g., Dworshak v. Moore*, 1998 ND 172, ¶ 15 n. 1, 583 N.W.2d 799; *Greenwood v. Moore*, 545 N.W.2d 790, 793 (N.D.1996); *Johnson v. North Dakota Workers' Compensation Bureau*, 539 N.W.2d 295, 298–99 n. 2 (N.D.1995); *Madison*, 503 N.W.2d at 246–47. As we explained in *Johnson*, 539 N.W.2d at 298–99 n. 2 (citation omitted):

> The attorney who has handled the case through the hearing process is completely familiar with it, and can advise the Bureau within days after the recommendation is issued whether there is any cause for closer review. As a consequence, the Bureau is able to issue final post-hearing orders, on average, within a week after receiving a recommendation. If the Bureau had to start from scratch and review the hearing record on every recommended order internally without any input from the attorney who knows the case well, an enormous backlog would quickly form, and injured workers and employers would have to wait months after a hearing before receiving a final order. *Pufall Testimony, supra.*

---

**3.** We are troubled by some of the legislative history on the 1997 enactment presented by the Bureau to support its assertions. In its written testimony on the bill, the Bureau stated that its normal procedure was to have the attorney who represented the Bureau at the hearing advise the Bureau whether to adopt the ALJ's recommendations. *See Hearing on H.B. 1270 Before the House Industry, Business, and Labor Comm.*, 55th N.D. Legis. Sess. (Feb. 3, 1997) (written testimony of Reagan R. Pufall, attorney for the Bureau) [*"Pufall Testimony"*]. Pufall's testimony further suggested the Bureau decision maker was thus able to rely on the attorney's familiarity with the record and did not have to "start from scratch":

We will not let an agency's statutory violation go unsanctioned if the violation was a result of systemic disregard of the law. . . . When agency conduct is prejudicial to the integrity of the system, and we find such conduct to have been commonplace, reversal may be warranted.

When a governmental agency systemically disregards the requirements of law, reversal may be required to prophylactically ensure the government acts consistently and predictably in accordance with the law. *Dworshak*, 1998 ND 172, ¶ 15 n. 1, 583 N.W.2d 799; *Greenwood*, 545 N.W.2d at 793.

■ [¶ 21] In order to establish the "institutional noncompliance" which amounts to "systemic disregard of law," the claimant must establish more than a single miscue or improper act. *Greenwood*, 545 N.W.2d at 793. Here, the record establishes that, rather than a single, isolated incident, the Bureau's standard practice was to allow its outside litigation counsel who had appeared at the hearing to consult with the decision maker and advise whether to adopt the ALJ's recommended decision. This practice by the Bureau is also admitted in the legislative history of the 1997 enactment of N.D.C.C. § 65–01–16(8). *See Hearing on H.B. 1270 Before the House Industry, Business, and Labor Comm.*, 55th N.D. Legis. Sess. (Feb. 3, 1997) (written testimony of Reagan R. Pufall, attorney for the Bureau). This is hardly a "single miscue." Rather, the Bureau concedes it routinely allowed these communications to occur.

[¶ 22] We conclude there has been a clear showing of institutional noncompliance which constitutes a systemic disregard of the law, and the Bureau's conduct has been "prejudicial to the integrity of the system," thereby warranting reversal. *Johnson*, 539 N.W.2d at 298–99 n. 2. Under the circumstances of this case, where an ALJ's recommended decision favorable to the worker was rejected after improper ex parte communications in violation of N.D.C.C. § 28–32–12.1, we conclude the proper remedy is reversal of the Bureau's order and reinstatement of the ALJ's recommended findings, conclusions, and order.

[¶ 23] The district court judgment affirming the Bureau's order is reversed. We remand with directions that the ALJ's findings, conclusions, and order be adopted as the final order of the Bureau.

[¶ 24] MARING and SANDSTROM, JJ., concur.

[¶ 25] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 26] Not all administrative agency proceedings are "adversarial" in the sense that the agency has the same interest as does a party, although in some instances the agency may be a party. *See* section 28–32–01(8) (" 'Party' means each person named or admitted as a party or properly seeking and entitled as of right to be admitted as a party. An administrative agency may be a party."). There are agencies which are simply the arbitrators of a dispute between two or more parties. In those instances, I do not believe the agency's attorney, who may have asked some questions during the proceeding and thus presumably "allowed to participate," is or should be foreclosed from communication with the agency head or hearing officer. N.D.C.C. § 28–32–12.1(3). If the majority opinion in its broad sweep intends to include such situations within its holding, I do not join it.

[¶ 27] I do agree that under the circumstances of this case, where the Bureau through its attorney, took a position contrary to the claimant before the hearing officer and the employer did not appear, the statute should apply. Therefore, I concur in the majority opinion insofar as it concludes ex parte contact between the decision maker and the Bureau's attorney should not have been allowed in this case.

[¶ 28] While I agree that the contact should not be allowed under the statutes in effect at the time the decision was made, I do not agree that the appropriate remedy is the approach the court adopted in *Madison v. North Dakota Dept. of Transp.*, 503 N.W.2d

243 (N.D.1993) relying on a footnote in *State v. Steffes*, 500 N.W.2d 608, 613–14 n. 5 (N.D. 1993) (stating "actions … potentially prejudicial to the accused, may warrant different rules if … commonplace."). In *Madison*, we observed not only the clear statutory provision that administrative agencies adhere to the North Dakota Rules of Evidence, we also observed the agency in that instance "continued to waive the Rules of Evidence despite district court instructions to the contrary." *Id.* at 246.

[¶ 29] Although the action here may be commonplace, the Bureau believed it was justified in that action under N.D.C.C. § 28–32–12.1(2): "An agency head or hearing officer may communicate with or receive aid from staff assistants if the assistants do not furnish, augment, diminish, or modify the evidence in the record." The majority dismisses that argument summarily, stating it "do[es] not believe it was intended to supersede the protections afforded by the specific provisions of N.D.C.C. § 28–32–12.1, which prohibit ex parte communications from persons who participated in the hearing." While that may be the opinion of the majority, it was not necessarily so clear prior to the majority's pronouncement of that interpretation, nor is it at all clear to me N.D.C.C. § 28–32–12.1(3) and (5) are more "specific" provisions than N.D.C.C. § 28–32–12.1(2); they are all part of the same statute. Furthermore, whether or not an amendment to an *existing* statute or a *new* statute, the intent of the Legislature in enacting N.D.C.C. § 65–01–16(8) could hardly be more clear. While I agree that statute does not control this situation, it is persuasive enough to me to foreclose applying the severe remedy the majority adopts.

[¶ 30] I would reverse the decision of the Bureau and remand for a new hearing in which the counsel for the Bureau, if it represents the Bureau, would be foreclosed from contact with the Bureau in its decision making process.

[¶ 31] Gerald W. VandeWalle, C.J.

