2000 ND 42

**Rosella ELSHAUG, Claimant and Appellee,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant,**

and

**Ashley Medical Center, Respondent.**

No. 990286.

Supreme Court of North Dakota.

March 21, 2000.

---

Stephen D. Little, of Dietz, Little & Haas, Bismarck, N.D., for claimant and appellee.

Leo F.J. Wilking, Special Assistant Attorney General, Fargo, N.D., for appellant.

MARING, Justice.

[¶ 1] The Workers Compensation Bureau appealed from a judgment reversing the Bureau's orders denying future benefits to Rosella Elshaug and denying reconsideration of its decision. We conclude there were improper ex parte contacts between the Bureau's outside counsel and the Bureau under N.D.C.C. § 28–32–12.1. We, therefore, affirm that part of the judgment reversing the Bureau's order denying reconsideration. We, however, reverse that part of the judgment directing the Bureau to award benefits and we remand with directions the Bureau grant Elshaug's petition for reconsideration and an evidentiary rehearing.

I

[¶ 2] Rosella Elshaug was employed in the Ashley Medical Center laundry facility for fourteen and one-half years until she resigned, effective November 22, 1997. Elshaug experienced severe physical reactions to chemical exposures while at work in the laundry on May 12, 1994, and again on November 4, 1996. She filed claims with the Bureau for the incidents. The Bureau accepted liability on both claims and paid medical benefits for her injuries.

[¶ 3] On June 25, 1997, the Bureau issued an order terminating future benefits for the 1996 injury, concluding Elshaug no longer was suffering consequences from that incident. Elshaug, claiming she had not fully recovered from the chemical exposures at work and, as a result, currently suffers flu-like symptoms and severe allergic reactions to many substances, filed a reapplication for continued benefits. The Bureau issued an order on January 28, 1998, denying the reapplication for benefits. Elshaug then filed a request for reconsideration and for a formal hearing.

[¶ 4] A hearing was held on June 11, 1998. Dr. Pedro Mendoza, who is a spe-

cialist in pulmonary disease and occupational medicine, had examined Elshaug at the Bureau's request. He testified Elshaug was no longer suffering consequences from the chemical exposures at work. He stated that, in his view, Elshaug's current allergies and severe flu-like symptoms are not caused by nor related to the prior work incidents. Contrary views were expressed by Dr. Jacqueline Krohn, and Dr. David L. Morris, both of whom examined and treated Elshaug for multiple chemical sensitivities. These doctors concluded that Elshaug's present allergic reactions to many substances and flu-like symptoms are caused by the 1994 and 1996 chemical exposures at work.

[¶ 5] On August 5, 1998, the administrative law judge (ALJ) issued recommended findings of fact, conclusions of law, and order, concluding Elshaug's current medical conditions are not causally related to the prior work incidents and recommending the Bureau terminate Elshaug's benefits. On August 21, 1998, the Bureau's Director of Claims and Rehabilitation, Jeff R. Bitz, adopted the findings, conclusions, and recommendation of the ALJ and entered an order denying Elshaug future benefits. On September 16, 1998, Elshaug petitioned for reconsideration. In support of the petition, she filed additional medical reports by Dr. Krohn and Dr. Morris. On October 16, 1998, the Bureau entered an order denying Elshaug's petition for reconsideration. Elshaug appealed to the district court, which reversed both of the Bureau's orders and directed the Bureau to provide Elshaug the benefits to which she is entitled. The Bureau appealed.

## II

[¶ 6] The dispositive issue on this appeal involves improper ex parte communications between the Bureau and its outside counsel. After the ALJ had issued recommended findings and conclusions in this case, but before the Bureau had issued an order adopting or rejecting those findings and conclusions, the Bureau's outside counsel, Leo Wilking, sent a letter to the Bureau's in-house counsel, Julie Leer, stating in part:

> I believe that ALJ Wahl's reasoning is sound and that the Bureau should adopt the recommended findings, conclusions and order as submitted.

> This is a significant victory for the Bureau, as an adverse decision would have resulted in the payment of significant disability benefits (claimant has not worked since November 22, 1997) and a very difficult vocational rehabilitation challenge to find employment for this former laundry worker in Ashley, North Dakota.

The Bureau subsequently entered its order of August 21, 1998, adopting the ALJ's recommended findings, conclusion and order.

[¶ 7] When Elshaug petitioned the Bureau for reconsideration of its order, Attorney Leer contacted Attorney Wilking and they discussed the petition. They agreed the medical opinions by Dr. Krohn and Dr. Morris attached to the petition for reconsideration "did not differ to a significant degree from the written medical reports which were submitted" by them at the June 11, 1998 hearing. Attorney Wilking then drafted an "Order Denying Petition for Reconsideration" which was subsequently signed by Bitz.

[¶ 8] When the ex parte communications between the Bureau's outside and in-house attorneys occurred, N.D.C.C. § 28–32–12.1(3) provided:

> Unless required for the disposition of ex parte matters specifically authorized by statute, no party to an adjudicative proceeding, no person who has a direct or indirect interest in the outcome of the proceeding, no person allowed to participate in the proceeding, and no person who presided at a previous stage in the proceeding may communicate directly or indirectly in connection with any issue in that proceeding, while the proceeding is pending, with any agency head or hear-

ing officer in the proceeding without notice and opportunity for all parties to participate in the communication.[1]

In *Scott v. North Dakota Workers Compensation Bureau*, 1998 ND 221, ¶ 10, 587 N.W.2d 153, we explained the intent of this statute:

The clear intent of the statute is to prohibit ex parte contacts between the decision maker and persons who participated in the hearing or otherwise have an interest in the case.

Quoting from the Federal Court of Claims in *Camero v. United States*, 179 Ct.Cl. 520, 375 F.2d 777, 780–81 (1967) (citations omitted), we emphasized there are strong policy reasons for prohibiting ex parte communications between the attorney who represented the agency at an adversarial hearing and the agency decision maker:

[O]ne of the fundamental premises inherent in the concept of an adversary hearing, particularly if it is of the evidentiary type, is that neither adversary be permitted to engage in an *ex parte* communication concerning the merits of the case with those responsible for the decision.... It is difficult to imagine a more serious incursion on fairness than to permit the representative of one of the parties to privately communicate his recommendations to the decision makers. To allow such activity would be to render the hearing virtually meaningless.

*Scott* at ¶ 12.

[¶ 9] The ex parte communications in this case are no less egregious than the ex parte communication in *Scott*. The first ex parte communication between the Bureau's lawyers occurred after the ALJ had issued recommended findings and conclusions but before the Bureau had made a decision whether to adopt or reject those recommendations. The Bureau's outside counsel urged the Bureau to accept the recommendation of the ALJ to deny the claim. Outside counsel described the ALJ's recommendations as "very detailed and thorough" and stated he believed the ALJ's "reasoning is sound and ... the Bureau should adopt the recommended findings, conclusions and order as submit-

---

1. In 1997 the Legislature added a new section to N.D.C.C. § 65–01–16(8), which included the following provision regarding communications between the Bureau and its legal counsel:

The following procedures must be followed in claims for benefits, notwithstanding any provisions to the contrary in chapter 28–32:

....

8. Rehearings must be conducted as hearings under chapter 28–32 to the extent the provisions of that chapter do not conflict with this section. The bureau may arrange for the designation of hearing officers to conduct rehearings and issue recommended findings, conclusions, and orders. In reviewing recommended findings, conclusions, and orders, the bureau may consult with its legal counsel representing it in the proceeding.

1997 N.D. Sess. Laws ch. 532, § 1. This provision applies only to claims filed after July 31, 1997.

The Legislature in 1999 added the following provision, under N.D.C.C. § 28–32–12.1(4), placing limitations upon communications between an administrative agency and its counsel:

In an adjudicative proceeding conducted by a hearing officer other than the agency head, counsel for the administrative agency and the agency head, without notice and opportunity for all parties to participate, may communicate and consult regarding the status of the adjudicative proceeding, discovery, settlement, litigation decisions, and other matters commonly communicated between attorney and client, to permit the agency head to make informed decisions. This subsection does not apply after recommended findings of fact, conclusions of law, and orders have been issued, except counsel for the administrative agency and the agency head may communicate regarding settlement and negotiation after recommended findings of fact, conclusions of law, and orders have been issued.

1999 N.D. Sess. Laws ch. 290, § 1. The language of the 1999 legislation places limitations on the discussions between an agency and its counsel after a hearing officer has issued recommended findings of fact, conclusions of law, and orders. Because Elshaug's claim in this case was filed before the effective date of these provisions, we do not construe or interpret them for purposes of resolving this appeal.

ted." There was a second ex parte communication between outside counsel and the Bureau's in-house lawyer before the Bureau ruled on Elshaug's petition for reconsideration. The Bureau's attorneys conferred and mutually agreed there was no substance to the petition. Their ex parte discussion resulted in the Bureau's outside counsel drafting a proposed order denying the petition for reconsideration, which was ultimately signed, verbatim, by the Bureau's decision maker. The ex parte communications were clearly a violation of the statute and warrant remedial measures.

## III

■ [¶ 10] While the Bureau concedes the ex parte communications were improper, it argues the harsh remedy we imposed in *Scott* of reversing the Bureau's order and reinstating benefits for the claimant is not warranted here because, unlike the situation in *Scott*, the ALJ in this case recommended the Bureau deny Elshaug's claim. Under the circumstances of this case, we conclude a different remedy is warranted than we imposed in *Scott* for the ex parte communication violation of N.D.C.C. § 28–32–12.1(3). In *Scott* the ALJ recommended a decision in favor of the claimant. After the ex parte communication, the Bureau rejected the ALJ's recommendation and denied the claimant's request for benefits. In this case, the ALJ recommended the Bureau deny the claimant's request for benefits, and, after the ex parte communication, the Bureau adopted the recommendation. We conclude the appropriate remedy, under these circumstances, is to reverse the Bureau's order denying benefits and to remand with directions the Bureau grant the claimant's petition for reconsideration and a new evidentiary hearing. The Bureau must allow Elshaug an opportunity to introduce additional medical evidence at the hearing to establish her current symptoms and conditions are causally related to her prior work exposures to chemical substances.

[¶ 11] That part of the judgment reversing the Bureau's order denying the petition for reconsideration is affirmed, that part of the judgment directing the Bureau to award benefits is reversed, and the case is remanded with directions the Bureau grant Elshaug's petition for reconsideration and rehearing.

[¶ 12] CAROL RONNING KAPSNER, concurs.

VANDE WALLE, Chief Justice, concurring in result.

[¶ 13] Relying on my concurrence and dissent in *Scott v. North Dakota Workers Comp. Bureau*, 1998 ND 221, ¶¶ 26–30, 587 N.W.2d 153, I agree with the majority opinion to the extent it holds Elshaug is to receive a new evidentiary hearing.

[¶ 14] Gerald W. Vande Walle, C.J.

SANDSTROM, Justice, concurring in the result.

[¶ 15] The majority imposes a rather curious "remedy." The matter is remanded to the Bureau to redo what was done right as a remedy for that which was done wrong. The remedy imposed is the one advocated by the concurring and dissenting opinion in *Scott v. North Dakota Workers Comp. Bureau*, 1998 ND 221, ¶¶ 26–30, 587 N.W.2d 153 (VandeWalle, C.J., concurring and dissenting), but rejected by the *Scott* majority. Nevertheless, I reluctantly conclude some "remedy" is better than no remedy, and I concur in the result.

[¶ 16] WILLIAM A. NEUMANN, J., concurs.