**Wade KEEPSEAGLE, Plaintiff and Appellant,**

v.

**Richard J. BACKES, ND Highway Commissioner, Defendant and Appellee.**

Civ. No. 890344.

Supreme Court of North Dakota.

April 12, 1990.

Vinje Law Firm, Bismarck, for plaintiff and appellant; argued by Ralph A. Vinje.

Steven F. Lamb (argued), Asst. Atty. Gen., North Dakota Dept. of Transp., Bismarck, for defendant and appellee.

ERICKSTAD, Chief Justice.

Wade Keepseagle appeals from a district court judgment affirming a decision of the North Dakota State Highway Commissioner [1] to suspend Keepseagle's license pursuant to Ch. 39–20, N.D.C.C. We affirm.

On May 27, 1989, at approximately 6:06 p.m., Sergeant Jerry Seeklander of the North Dakota Highway Patrol stopped Keepseagle for speeding south of Bismarck on Highway 1804. Sergeant Seeklander detected an odor of alcohol on Keepseagle's breath and noticed that his eyes were glassy and bloodshot. Several field sobriety tests were conducted and Keepseagle was subsequently arrested for driving or being in actual physical control of a vehicle in violation of section 39–08–01, N.D.C.C.

Keepseagle was transported to St. Alexius Hospital in Bismarck where a blood sample was drawn by a registered nurse in accordance with the State Toxicologist's directions for blood submission and collection. The sample was drawn at approximately 7:01 p.m. on May 27, 1989, and was mailed to the office of the State Toxicologist in Fargo on May 28, 1989. The blood sample was received at the office of the State Toxicologist on May 30, 1989, and was analyzed on May 31, 1989. The analysis indicated a blood-alcohol concentration of 0.11 percent by weight.

On June 7, 1989, Keepseagle requested an administrative hearing pursuant to section 39–20–05, N.D.C.C. On June 13, 1989, an administrative hearing was held regarding the suspension of Keepseagle's license. At the conclusion of the administrative hearing, the Commissioner's hearing officer made the following findings of fact, conclusions of law and decision:

"Sgt. Seeklander stopped a driver, Mr. Keepseagle, for speeding 57 in a 45 mile

---

1. Effective January 1, 1990, and subsequent to the initiation of this case, the name of the "state highway department" and the title of "highway commissioner" have been changed to the "de-partment of transportation" and the "director of the department of transportation." See section 24–02–01.2, N.D.C.C.

an hour zone. Mr. Keepseagle['s] eyes were glassy and bloodshot and the odor of alcoholic beverages was about him. He had trouble maintaining his balance and following directions when walking an imaginary line, when standing on one leg, and when touching his nose. Mr. Keepseagle said his ABCs, although repeating some of the letters. He did count frontwards and backwards. Sgt. Seeklander arrested Mr. Keepseagle for driving while under the influence of intoxicating beverages and he had him submit to a blood test which showed that he had .11 percent blood-alcohol content by weight. Mr. Vinje questioned the timeliness of the blood test and also whether or not the blood was whole.

"From those findings of fact, and this is by what they call a preponderance of the evidence, which means it's an overview of what we've learned today, I've made conclusions of law on the four issues that are to be determined in today's hearing. First of all, I find Sgt. Seeklander had articulable grounds to stop Mr. Keepseagle for speeding and then once stopped he gained reasonable grounds to believe that Mr. Keepseagle had violated the drinking and driving law, 39–08–01, of the North Dakota Century Code. On the second issue, whether or not there was an arrest, I find that Mr. Keepseagle was arrested. On the third issue, I find Mr. Keepseagle was tested in accordance with the statutes, 39–20–01 and 39–20–02 of the North Dakota Century Code. On the fourth issue, I find Mr. Keepseagle was fairly tested and the results were over .10 percent blood-alcohol content by weight.

"As part of this hearing, I have considered the objections that Mr. Vinje made to the type of blood drawn and the performance of the test as being … I find that they were as required by the state toxicologist.

"The decision is that Mr. Keepseagle's driving privileges will be suspended for 91 days."

Keepseagle appealed from the hearing officer's decision to the district court. The district court affirmed the administrative hearing officer's decision. Keepseagle raised the following issue on appeal to this Court: Does section 39–20–03.1, N.D.C.C., prevent the Highway Commissioner from suspending driving privileges when it cannot be shown that a blood specimen was tested within two hours of the appellant's having driven?

■ An appeal from a district court judgment involving a license suspension under Ch. 39–20, N.D.C.C., is governed by the Administrative Agencies Practice Act, Ch. 28–32, N.D.C.C., and our review is limited to an examination of the record compiled before the administrative agency rather than the findings of the district court. See Greaves v. N.D. State Highway Com'r, 432 N.W.2d 879 (N.D.1988); Berger v. State Highway Com'r, 394 N.W.2d 678 (N.D.1986); Moser v. North Dakota State Highway Com'r, 369 N.W.2d 650 (N.D. 1985); Dodds v. North Dakota State Highway Com'r, 354 N.W.2d 165 (N.D.1984). Our review of administrative agency decisions involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? Schmalz v. N.D. Workers Compensation Bureau, 449 N.W.2d 817 (N.D.1989); Falcon v. Williams County Social Service Board, 430 N.W.2d 569 (N.D.1988); Otto v. Job Service North Dakota, 390 N.W.2d 550 (N.D.1986).

Keepseagle's license was suspended pursuant to section 39–20–03.1, N.D.C.C., which in relevant part reads:

"If a person submits to a test under section 39–20–01, 39–20–02, or 39–20–03 and the test shows that person to have a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle, the following procedures apply:

1. The law enforcement officer shall immediately take possession of the per-

son's operator's license and shall immediately issue to that person a temporary operator's permit if the person then has valid operating privileges, extending driving privileges for the next twenty-five days, or until earlier terminated by the decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. The temporary operator's permit serves as the commissioner's official notification to the person of the commissioner's intent to revoke, suspend, or deny driving privileges in this state."

Keepseagle argues that the language "and the test shows [a .10 percent by weight] ... at the *time of the performance of a chemical test within two hours* after the driving [emphasis added]" requires that the blood test, *i.e.*, the chemical analysis, be done within two hours after the driving or actual physical control of the vehicle. The Commissioner argues that the "performance of a chemical test" language refers to the performance of the driver, not of the State Toxicologist and that the statute is satisfied if the blood is drawn within two hours of the driving.

The interpretation of a statute is a question of law, fully reviewable by this Court. *State v. Bower*, 442 N.W.2d 438, 440 (N.D. 1989); *Aanenson v. Bastien*, 438 N.W.2d 151, 153 (N.D.1989). We have previously set out our standard for the interpretation of a statute as follows:

"Our primary objective in the interpretation of a statute is to ascertain the intent of the legislature. *Peterson v. Heitkamp*, 442 N.W.2d 219 (N.D.1989). We look first to the language of the statute. *Aanenson v. Bastien*, 438 N.W.2d 151 (N.D.1989). If the language of a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit. *County of Stutsman v. State Historical Soc.*, 371 N.W.2d 321 (N.D.1985). If a statute's language is ambiguous or of doubt-

ful meaning, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain legislative intent. *First Sec. Bank, Underwood, N.D. v. Enyart*, 439 N.W.2d 801 (N.D.1989)."

*Six v. Job Service North Dakota*, 443 N.W.2d 911, 913 (N.D.1989). We have also previously indicated that a statute must be construed to avoid absurd and ludicrous results or to require idle or unnecessary acts. *Larson v. Wells County Water Resource Bd.*, 385 N.W.2d 480, 482 (N.D. 1986).

■ While the language of the statute in question may be ambiguous and may reasonably be interpreted as requiring the "chemical test" [2] to be "performed" within two hours of driving, the common sense interpretation is that if the blood sample is drawn within two hours and adequately preserved for analysis, the results are valid. While there is no evidence in this record to show that there is a long-standing administrative practice requiring that the blood only be drawn, rather than analyzed within two hours, we note that this practice has not previously been challenged in this Court.

In response to the argument that a blood test was not fairly administered, we have previously found a disputable presumption of regularity which applies to the official acts of the State Toxicologist, and if no evidence to contradict this presumption is introduced, the presumption stands. *See State v. VandeHoven*, 388 N.W.2d 857, 859 (N.D.1986). We have also held that when the State Toxicologist has promulgated methods and procedures for conducting the requisite test, fair administration is established only by proof that those methods were scrupulously complied with or by expert testimony. *State v. Sivesind*, 439 N.W.2d 530, 533 (N.D.1989).

The State Toxicologist has set out directions for the collection and submission

**2.** Section 39–20–01, N.D.C.C., defines "chemical test" or "chemical analysis" as "any test to determine the alcoholic, or other drug, or combina- tion thereof, content of the blood, breath, saliva, or urine, approved by the state toxicologist under this chapter."

of blood specimens.[3] Keepseagle does not contend that the directions were not properly followed. He simply contends that the method used in this case and in the past is in error because the language of the statute requires that the blood sample be analyzed within two hours of his driving.

While the issue of what must be done within two hours of driving, the analysis of the blood or simply the drawing of the sample, has never been directly addressed by this Court, we have previously dealt with the language of the two-hour requirement found in section 39–20–03.1.[4] *See State v. Allery,* 371 N.W.2d 133 (N.D. 1985); *State v. Vetsch,* 368 N.W.2d 547 (N.D.1985); *State v. Kimball,* 361 N.W.2d 601 (N.D.1985). In the cases listed, the defendants claimed that the results of their blood-alcohol tests were inadmissible because the State had not proved that the "test" had been performed within two hours of the driving. These cases involved the issue as to whether or not the blood had been drawn within two hours of the driving. While these cases are not directly on point, we find the interpretation of the language therein not inconsistent with our view of the meaning of the language pertinent to this case.

We find the language of section 39–20–03.1, N.D.C.C., to be ambiguous and, in utilizing the rules of construction for interpreting statutes, we conclude the language requires only that the blood be drawn within two hours of the driving, not that it be analyzed within two hours. If properly preserved and analyzed pursuant to the methods promulgated by the State Toxicologist, the results may be used to support a license suspension pursuant to section 39–20–03.1, N.D.C.C. To conclude to the contrary would lead to a ridiculous result.

Accordingly, we affirm the judgment of the district court which affirmed the Commissioner's suspension of Keepseagle's license.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.

---

3. The State Toxicologist's directions for the collection and submission of a blood specimen as of the time pertinent to this proceeding read as follows:

    "FOR BLOOD OR OTHER FLUID SPECIMENS

    "1. Use a sterile, dry, clean syringe and needle, and non-alcoholic, non-volatile, skin disinfectant.
    "2. Remove stopper from vial before filling. These vials do not have a vacuum.
    "3. If possible place 10 ml of whole blood or other fluid specimen into the vial and replace the stopper.
    "4. Invert the vial several times to mix the chemical and prevent clotting.
    "5. Fill in name of subject, date, time and your name or initials on the label. Place it over the top and down the sides of the vial.
    "6. Fill in the top part of this form and place it and the sealed vial in the mailing container.
    "7. Place cotton or tissue paper on top of the vial. Replace the metal screw cap.
    "8. Affix the mailing container seal by placing it over the metal cap and down the cardboard sides.
    "9. Affix the return address label around the mailing container over the ends of the seal."
    Part of Exhibit 8 of the June 13, 1989, administrative hearing in the instant case.

4. The criminal statute for driving a vehicle or being in actual physical control of a vehicle while under the influence of intoxicating liquor (section 39–08–01 subd. 1(a), N.D.C.C.) contains the same language which is in question in this case.