2002 ND 112

**Priscilla Carol PHIPPS, Petitioner and Appellee,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

No. 20020055.

Supreme Court of North Dakota.

July 11, 2002.

Loren C. McCray, Solem Law Office, Beulah, for petitioner and appellee.

Andrew Moraghan, Assistant Attorney General, Office of the Attorney General, Bismarck, for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] The North Dakota Department of Transportation appeals from a district court judgment reversing an administrative hearing officer's decision to suspend Priscilla Carol Phipps's driver's license. We reverse the district court, concluding a chemical test is performed when a breath, blood, or urine sample is taken and preserved for analysis, and a test performed exactly two hours after driving is performed within two hours of driving.

I

[¶ 2] A deputy sheriff stopped Priscilla Carol Phipps for speeding at 12:49 a.m., and subsequently arrested her at 1:14 a.m. for driving under the influence. While driving her to the Mercer County Law Enforcement Center, the officer called ahead and asked a jailer to turn on the Intoxilyzer. Once they reached the Law Enforcement Center, the officer attempted to take a breath sample from Phipps, but discovered the Intoxilyzer had not been turned on. Phipps requested and received a drink of water. She finished the water at 2:22 a.m. Phipps gave two breath samples, one at 2:43 a.m. and the second at 2:49 a.m. The final room air sample was taken at 2:50 a.m. The results of the tests

showed Phipps had a blood alcohol level of .13% at 2:49 a.m.

[¶ 3]   At the administrative hearing, the hearing officer admitted the results of the test and suspended Phipps's license for 91 days.  The hearing officer found:

> [No] provision of NDCC Ch. 39–20 specifically defines the exact moment that a breath test is concluded.  Exhibit 8, the state toxicologist's approved method for the operation of the Intoxilyzer refers to the testing sequence on page 2 in the second full paragraph, but does not identify the moment at which the test is concluded for purposes of analyzing a motorist's breath to determine alcohol content.  In *Keepseagle v. Backes*, 454 N.W.2d 312 (N.D.1990), the North Dakota Supreme Court held that a blood test is complete for purposes of compliance with the two hour time limit at the moment the blood sample is taken from the arm and not when the ultimate testing process has been finished.  The same should hold true for breath-alcohol testing.  In fact, the test record and checklist which is prepared, distributed and regulated by the state toxicologist, Exhibit 9, indicates on its face that the chemical test to determine the subject's blood alcohol concentration occurred at 2:49.  Accordingly, the time of the test is the time the sample is taken and analyzed, not the time of the ultimate conclusion of the testing sequence.  In this case, the properly conducted chemical analysis indicated [Phipps] had a blood alcohol concentration of at least 0.10% by weight as determined within two hours of the time she drove a motor vehicle, so [Phipps]'s license and driving privileges must be suspended pursuant to NDCC § 39–20–04.1.

[¶ 4]   Phipps appealed the decision of the hearing officer.  The district court reversed the hearing officer's decision and concluded the test was not performed within the allowed two-hour period.  The district court stated:

> The record indicates here that the second to the last step in the testing procedure, the second test of the subject's breath, was completed exactly two hours from the time of driving.  The final step of the test, the last room air test, was actually completed one minute beyond the two hour time limit.

> I conclude that the case really turns on the meaning of the word "performance" as it is used in 39–20–03.1.  The State's position, apparently, is that performing the test does not necessarily have to include the final room air test, inasmuch as the alcohol reading is the crucial factor.

> This Court disagrees with that conclusion, and based on the record of the case, now orders the decision of the agency reversed.

> To "perform something . . . is to begin and carry through to completion."  *The American Heritage Dictionary of the English Language.*  A chemical test done without the required final room air test is not a "performed test" in my opinion.  Without the reading on the final room air sample, the test results would be left in question, and the test would be invalid.  Because the record makes clear that the final step in the testing process did not occur within the two hour limit, the test was not performed within the required time.

The Department appealed from the district court's ruling.

[¶ 5]   Phipps timely requested a hearing under N.D.C.C. § 39–20–05.  The hearing officer had jurisdiction under N.D.C.C. § 39–20–05.  The notice of appeal from the administrative agency decision to the district court was properly filed within seven days under N.D.C.C. § 39–

20–06. The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The Department filed a timely notice of appeal from the district court judgment under N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–49.

## II

[¶ 6] "The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs the review of an administrative agency decision to suspend a driver's license." *Lapp v. N.D. Department of Transportation*, 2001 ND 140, ¶ 6, 632 N.W.2d 419. On appeal, "we review the record and decision of the administrative agency, not the ruling of the district court." *McPeak v. Moore*, 545 N.W.2d 761, 762 (N.D.1996). "The district court's analysis is entitled to respect if its reasoning is sound." *Kraft v. N.D. State Bd. of Nursing*, 2001 ND 131, ¶ 10, 631 N.W.2d 572. "[R]eview is limited to the record before the agency." *Ringsaker v. Dir., N.D. Department of Transportation*, 1999 ND 127, ¶ 5, 596 N.W.2d 328. We affirm the order of an agency, unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46. "[W]hen reviewing the factual findings of an administrative agency 'we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.'" *Bryl v. Backes*, 477 N.W.2d 809, 811 (N.D.1991) (quoting *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979)). "This standard defers to the hearing officer's opportunity to hear the witnesses' testimony and to judge their credibility and we will not disturb the agency's findings unless they are against the greater weight of the evidence." *Johnson v. N.D. Department of Transportation*, 530 N.W.2d 359, 361 (N.D.1995).

[¶ 7] When an "appeal involves the interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the agency's order is not in accordance with the law." *Erickson v. N.D. Department of Transportation*, 507 N.W.2d 537, 539 (N.D.1993). "The interpretation of a statute is a question of law, fully reviewable" on appeal. *Keepseagle v. Backes*, 454 N.W.2d 312, 315 (N.D.1990).

Our primary objective in the interpretation of a statute is to ascertain the intent of the legislature. We look first to the language of the statute. If the language of a statute is clear and unambiguous,

the letter of the statute cannot be disregarded under the pretext of pursuing its spirit. If a statute's language is ambiguous or of doubtful meaning, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain legislative intent.

*Id.* (citations omitted).

## III

[¶ 8] The issue on appeal is whether Phipps's Intoxilyzer test was performed within two hours of driving. This issue requires us to decide what constitutes "performance of a chemical test" under N.D.C.C. § 39–20–03.1, and whether "within two hours" includes a period of exactly two hours. Section 39–20–03.1, N.D.C.C., provides, in part:

If a person submits to a test under section 39–20–01, 39–20–02, or 39–20–03 and the test shows that person to have an alcohol concentration of at least ten one-hundredths of one percent by weight . . . at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle, the following procedures apply. . . .

The State Toxicologist's approved method sets forth the tests that are included in an Intoxilyzer test.

The North Dakota Intoxilyzer Test sequence shall include these tests in the following order: diagnostic test, room air test, subject test, room air test, standard solution test, room air test, subject test, and room air test.

*Approved Method to Conduct Breath Test with Intoxilyzer,* dated September 1, 2000.

## A

[¶ 9] The Department argues the district court erred by concluding "performance of a chemical test," under N.D.C.C. § 39–20–03.1, requires the completion of each step in the testing sequence outlined in the approved method. The Department relies on the definition of performance articulated in *Keepseagle v. Backes,* 454 N.W.2d 312 (N.D.1990).

[¶ 10] In *Keepseagle,* this Court reviewed whether an individual's driver's license could be suspended when a blood sample was not analyzed within two hours of driving. 454 N.W.2d at 314. The driver argued his blood sample should have been analyzed to determine the alcohol content within two hours of driving to meet the requirements set forth in N.D.C.C. § 39–20–03.1. *Id.* at 315. The Department argued the language "performance of a chemical test" in N.D.C.C. § 39–20–03.1 refers to performance by the driver. *Id.* This Court agreed and concluded:

While the language of the statute in question may be ambiguous and may reasonably be interpreted as requiring the "chemical test" to be "performed" within two hours of driving, the common sense interpretation is that if the blood sample is drawn within two hours and adequately preserved for analysis, the results are valid.

*Id.* (footnote omitted).

[¶ 11] Phipps argues *Keepseagle* is distinguishable from her case because she was given a breath test and the driver in *Keepseagle* was given a blood test. Phipps argues that when a breath test is given, all eight tests in the testing sequence must be completed within two hours for the test to be performed under N.D.C.C. § 39–20–03.1. The interpretation urged by Phipps would result in a different meaning of "performance of a chemical test" depending on the type of chemical test given.

[¶ 12] Phipps has not offered a sound reason for departing from the definition of

"performance" articulated in *Keepseagle.* We conclude "performance," under N.D.C.C. § 39–20–03.1, should not be interpreted differently depending on the type of chemical test administered. A chemical test meets the requirement of performance, under N.D.C.C. § 39–20–03.1, once the sample—whether it is blood, breath, or urine—is preserved for analysis. *See Keepseagle,* 454 N.W.2d at 315.

[¶ 13] Our definition of performance, however, does not equate the performance of a chemical test with the admissibility of the results of the test. We adhere to our previous holdings that "[a]bsent testimony by the state toxicologist, the foundational requirement necessary to show fair administration of a [chemical test] and admissibility of the test results is a showing that the test was administered in accordance with the approved methods filed with the clerk of the district court. Thus, reliability and accuracy of the results are established by demonstrating compliance with the methods adopted by the state toxicologist." *Moser v. N.D. State Highway Commissioner,* 369 N.W.2d 650, 653 (N.D.1985).

[¶ 14] According to *Keepseagle,* "performance" under N.D.C.C. § 39–20–03.1 is satisfied once a sample is preserved for analysis. *Keepseagle,* 454 N.W.2d at 315. Because Phipps's breath sample was preserved for analysis at 2:49 a.m., her chemical test was performed at 2:49 a.m. *See id.*

## B

[¶ 15] Next, the Department argues Phipps's performance of her chemical test was "within" two hours because the definition of "within" includes the exact time at the outermost limit of the period. Phipps argues the word "within" does not include the outermost limit of a period, but

rather, "within two hours" means within less than two hours.

[¶ 16] The phrase "within two hours" is ambiguous because "within" has different meanings. *See Southeast Cass Water Resource Dist. v. Burlington Northern R.R. Co.,* 527 N.W.2d 884, 888 (N.D.1995) (The language of "a statute is ambiguous if it is susceptible to differing, but rational, meanings.") There is no North Dakota case law interpreting the phrase "within two hours." Nor does the legislative history of N.D.C.C. § 39–20–03.1 provide guidance.

[¶ 17] Several other jurisdictions have defined "within." *See, e.g., Wall v. Youmans,* 223 Ga. 191, 154 S.E.2d 191, 192–93 (1967) (a requirement that new administrative rules be filed with the Secretary of State within 20 days from the effective date means the rules must be filed no later than 20 days after the effective date); *Adams v. Ingalls Packing Co.,* 30 Wash.2d 282, 191 P.2d 699, 701 (1948) (use of "within" sets the limit beyond which an action shall not take place); *State v. Gehlbach,* 205 La. 340, 17 So.2d 349, 352 (1943) (the outermost point in a period is within the period); *Young v. Waldrop,* 111 Mont. 359, 109 P.2d 59, 60–61 (1941) ("when time is spoken of, any act is 'within' the time named that does not extend beyond it"); *Dibble v. David Hodes Co., Inc.,* 132 Or. 596, 277 P. 820, 820–21 (1929) (use of "within" in the context of "within 30 days from the time the appeal was perfected" means "not beyond 30 days from the time the appeal is perfected"); *Rice v. J.H. Beavers & Co.,* 196 Ala. 355, 71 So. 659, 660 (1916) ("The use of the word 'within,' as a limit of time, or degree, or space, embraces the last day, or degree, or entire distance, covered by the limit fixed."); *Hamilton v. State,* 101 Tenn. 417, 47 S.W. 695, 696 (1898) ("The term 'within,' as a limit of time or space or degree, embraces the last day or degree or entire distance

covered by the limit."); *Union Trust Co. v. Chattanooga Electric Ry. Co.*, 101 Tenn. 297, 47 S.W. 422, 422 (1898) (" 'Within' a certain time embraces the last day of the time limited, as does the word 'after.' "); *Jennings v. Russell*, 92 Ala. 603, 9 So. 421, 423 (1891) ("It is plain that the word 'within' as used in the statute means, 'in the limits or compass of; not beyond.' "); *Sanborn v. Fireman's Ins. Co.*, 82 Mass. 448, 16 Gray 448 (1860) ("When time is spoken of, any act is within the time named that does not extend beyond it."); *see also* 46 *Words and Phrases,* "within" (2001).

[¶ 18]   In *State v. Gehlbach,* a Louisiana Supreme Court case, the court discussed the definition of "within."

> The phrase "within one year" deals with the element of time.  Time is not a static thing. . . . If a person is required to perform an act within a given year, and he does it before the end of that period, even on the last fractional second thereof no matter how small, his efforts are timely.  If, on the other hand, the last instant of the year is allowed to pass without performance but he acts on the very next infinitesimal fraction of a second, he performs untimely; he is then in a new period, not within but without the given one, and more than the year has elapsed.  The act must be done either within the year or without the year; there is and can be no intermediate point.

> The following illustration, although not dealing with the element of time, is appropriate.  If a physician states to a patient that the cost of an operation will be "within $200," and, following a performing of the services, a statement is rendered for exactly $200, that charge is "within $200."  Or if he says that the cost will be "not more than $200," a charge of $200 is still within the $200. At the exact point of $200 the cost is

neither less than nor more than $200; yet it is within that amount.

*State v. Gehlbach,* 205 La. 340, 17 So.2d 349, 352 (1943).

[¶ 19]   One jurisdiction has upheld a criminal conviction for driving while intoxicated when the driver's breath test was taken exactly two hours after the arrest. *People v. Zawacki,* 244 A.D.2d 954, 665 N.Y.S.2d 172, 173 (N.Y.App.Div.1997).   Although other factors, such as the driver's consent and a stipulation to the time of the arrest contributed to the court's decision, the court briefly examined the issue of the definition of "within."

> The court properly admitted the breathalyzer test result.   Defendant waived any argument based on the two-hour rule, having stipulated to the exclusion of evidence concerning the time of arrest.  We reject defendant's argument that the 10:26 P.M. field breath test, rather than the 10:30 P.M. arrest, triggered the two-hour window.  The statute provides that the breathalyzer test results are admissible provided that the breathalyzer test was administered either within two hours after the arrest or within two hours after the breath test.  The case relied on by defendant . . . disregards the plain language of the statute in holding otherwise.  We further reject defendant's contention that a breathalyzer test administered exactly two hours after arrest is not "within" two hours of arrest.  In any event, the Court of Appeals has held that the two-hour limit is inapplicable to chemical tests administered pursuant to defendant's actual consent.

*Id.* (citations omitted).

[¶ 20]   Although the authorities defining "within" often depend on specific statutory provisions, the prevailing use in relation to time is to include the outer limit and exclude the starting point. *See, e.g., Wall v.*

*Youmans,* 223 Ga. 191, 154 S.E.2d 191, 192–93 (1967); *Adams v. Ingalls Packing Co.,* 30 Wash.2d 282, 191 P.2d 699, 701 (1948); *State v. Gehlbach,* 205 La. 340, 17 So.2d 349, 352 (1943); *Rice v. J.H. Beavers & Co.,* 196 Ala. 355, 71 So. 659, 660 (1916); *Hamilton v. State,* 101 Tenn. 417, 47 S.W. 695, 696 (1898); *Union Trust Co. v. Chattanooga Electric Ry. Co.,* 101 Tenn. 297, 47 S.W. 422, 422 (1898); *Sanborn v. Fireman's Ins. Co.,* 82 Mass. 448, 16 Gray 448 (1860); 46 *Words and Phrases,* "within" (2001).

[¶ 21]  These authorities are persuasive and in accord with our general provisions for the computation of time, as set forth in North Dakota's Rules of Civil Procedure and of Criminal Procedure. *See* N.D.R.Civ.P. 6; N.D.R.Crim.P. 45.

[¶ 22]  Accordingly, we conclude the use of "within two hours" in N.D.C.C. § 39–20–03.1 includes the outermost limit of the two-hour period. Because "within" a period includes the outermost limit of the period, Phipps's performance of a chemical test at 2:49 a.m. was within two hours of 12:49 a.m., the time she was driving.

## IV

[¶ 23]  Because "performance of a chemical test," as used in N.D.C.C. § 39–20–03.1, is satisfied when a breath sample is taken and preserved for analysis, and because "within," as used in N.D.C.C. § 39–20–03.1, includes the outermost limit of a period, we conclude Phipps performed her Intoxilyzer test within two hours of driving. We reverse the district court's judgment and remand for reinstatement of the administrative suspension of Phipps's driving privileges.

[¶ 24] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 25]  Because I believe this case is more akin to *Moser v. North Dakota State Highway Commissioner,* 369 N.W.2d 650 (N.D.1985), than *Keepseagle v. Backes,* 454 N.W.2d 312 (N.D.1990), I respectfully dissent. I do not believe *Keepseagle* is apposite. *Keepseagle* involved a blood sample drawn by a nurse at a hospital. On appeal, Keepseagle argued the blood sample must be tested within the two-hour limit prescribed in N.D.C.C. § 39–20–03.1. To construe the statute as Keepseagle urged, would have made the procedure prescribed by the State Toxicologist meaningless, since the procedure provided that after the blood sample was drawn it was to be mailed to the State Toxicologist for analysis. It was obvious that the sample could not have been analyzed within the two-hour period prescribed in § 39–20–03.1 and this Court refused to interpret the statute in that manner, noting "the common sense interpretation is that if the blood sample is drawn within two hours and adequately preserved for analysis, the results are valid." *Keepseagle,* at 315.

[¶ 26]  Here we are concerned not with a blood sample, but with a breath test using the Intoxilyzer and approved method prescribed by the State Toxicologist for that device. The approved method, as the majority notes, requires as the last step of the test a "room air test." In *Keepseagle* there was no argument the directions of the State Toxicologist were not followed. Rather: "Keepseagle does not contend that the directions were not properly followed. He simply contends that the method used in this case and in the past is in error because the language of the statute requires that the blood sample be analyzed within two hours of his driving." *Id.* at 316. Phipps, on the other hand, argues the Intoxilyzer test is not finally administered

until the room air test is completed, and that the room air test was not completed within the two hours prescribed by the statute.

[¶ 27] In *Moser,* 369 N.W.2d at 653, we held "[a]bsent testimony by the state toxicologist, the foundational requirement necessary to show fair administration of a breathalyzer test and admissibility of the test results is a showing that the test was administered in accordance with the approved methods filed with the clerk of the district court."

[¶ 28] In *Salter v. Hjelle,* 415 N.W.2d 801, 803 (N.D.1987), we observed that "[t]he purpose of § 39–20–07(5) and (6) is to ease the requirements for admissibility of chemical test results while ensuring that the test upon which the results are based is fairly administered. The legislature has struck a balance between procedural efficiency and substantive reliability."

[¶ 29] But, as we observed in *Moser,* 369 N.W.2d at 654, "[b]ecause the statute permits admission of such evidence without expert witness testimony to establish accuracy and reliability, all the requirements of the statute must be scrupulously met to ensure a uniform basis of testing throughout the State and fair administration." In *Moser,* we held the officer's failure to start the standard test at zero violated the approved procedures on file with the clerk of the district court. "Therefore, the minimum foundational requirement to show fair administration of the Breathalyzer test and admissibility of the Breathalyzer test result is absent because the test clearly was not performed according to methods approved by the state toxicologist." *Id.* at 654. Perhaps, as in *Moser* at 654, "the foundational defect might have been cured through testimony of the state toxicologist" but there was no such testimony here. Perhaps the completion of the room air test is not an integral part of the

Intoxilyzer test and therefore need not be completed within the two hours. "But unless we are to apply our own 'expert opinion' to these matters, once we veer from the regulations promulgated by the State Toxicologist, we are on uncharted seas." *Id.* at 655 (Vande Walle, J., concurring specially).

[¶ 30] I agree with the trial court that under the current prescribed method the final room air test is part of the entire Intoxilyzer test which must be administered within the two-hour period required by the statute.

[¶ 31] I would affirm the judgment reversing the license suspension.

[¶ 31] Gerald W. Vande Walle, C.J.